# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JACKI PETERSON, et al.,                  :

     Plaintiffs,                          :          Case No. 3:13cv00187

 vs.                                     :          District Judge Walter Herbert Rice
                                         Chief Magistrate Judge Sharon L. Ovington

NORTHEASTERN LOCAL SCHOOL              :
DISTRICT, et al.,

                                    :

     Defendants.                          :

                                        :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

This case involves allegations of student-on-student racial harassment in a high school and allegations that school officials failed to prevent, stop, or correct it but instead expelled the victim-students without taking disciplinary actions against the student perpetrators.

Plaintiffs Jazmen Peterson and Dameka Cunigan are former students at Kenton Ridge High School (Kenton Ridge HS), which is part of the Northeastern Local School District in Clark County, Ohio. Plaintiffs Jacki and Kyle Peterson are Jazmen's parents and are the legal guardian of their niece, Dameka Cunigan. Defendants are Northeastern

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Local School District; Louis A. Kramer, Superintendent of Northeastern Local School District; John Hill and Allyson Teusink, Principal and Assistant Principal, respectively, of Kenton Ridge HS; and Denise Schneider, Treasurer, Northeastern Local School District.

Plaintiffs' Amended Complaint asserts, under 42 U.S.C. §1983, violations of the Equal Protection Clause of the 14th Amendment to the Constitution and violations of their 14th Amendment rights to substantive and procedural due process. The Amended Complaint further claims that Defendants violated their rights under Title VI of the Civil Rights Act of 1963, 42 U.S.C. §2000d, *et seq.*, by discriminating against Plaintiffs on the basis of race and by retaliating against them. And the Amended Complaint raises state-law claims of intentional and negligent infliction of emotional distress, invasion of privacy, and loss of consortium.

The case is presently pending upon Defendants' Motion for Judgment on the Pleadings (Doc. #16), Plaintiffs' Memorandum in Opposition (Doc. #21), Defendants' Reply (Doc. #23), and the record as a whole.

## II.    Plaintiffs' Amended Complaint

Plaintiffs allege that starting in November 2011, Jazmen and Dameka, "both black females, were subject to racial and gender based discrimination by [Kenton Ridge] HS white male student T.B.." (Doc. #10, PageID at 147). According to Plaintiffs, T.B. posted racially-charged documents on Dameka's school locker. One such document is attached to Plaintiffs' Amended Complaint. At this stage of the litigation, it is

permissible to consider the contents of the document because the Amended Complaint refers to it, and its "racially-charged" (doc.#10, PageID at 147) contents are central to the claims contained in the Amended Complaint. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 912 (6th Cir. 2014). The document contains a drawing of a stick-figure person labeled "Damika" [sic]. A circle is drawn near or around the stick figure's neck, and a line is drawn from the circle to another drawing, which appears to represent a tree or cross of some sort. Handwritten notes appear with the drawing. Those notes state, verbatim without correction (or [sics]):

> "Imma hang yo ass dum ... n[-word]" and "get ready [illegible symbol] die!! Sincerly, your friend"

*Id.*, PageID at 155. The document is unsigned and does not otherwise identify its creator. Given the context of the threatening notes, the circle around the neck of the stick-figure person appears to be a noose and the line a rope. Regardless, it is reasonable to conclude that the drawings are an attempt to reinforce or magnify the handwritten threat to hang "Damika." *Id.*

Plaintiffs further allege, "The actions of T.B. and other [Kenton Ridge] HS students, were constant threatening and calculated to produce fear and apprehension in Dameka Cunigan." *Id.* Dameka responded to the constant threats by seeking "aid and comfort from her relative Jazmen Peterson who was also a black female [Kenton Ridge] HS student." *Id.*

Plaintiffs state, "T.B.'s actions were the subject of frequent and timely reports to Defendants by Plaintiffs Jacki and Kyle Peterson." *Id*., PageID at 147. As a result of those reports, "among other things," Defendant Northeastern Local School District "entered into a consent decree with the United States Department of Justice." *Id*. Plaintiffs allege:

> The objective of the Consent Decree was to resolve allegations of racial harassment against Black students at [Kenton Ridge] HS. Defendants behavior in failing to take active and effective measures to protect Dameka and Jazmen from racists [sic] taunts and racial epithets was pursuant to a longstanding custom of racial intolerance, racial nonpluralism and discrimination that permeates [Kenton Ridge] HS of which defendants are aware, have been loathe [sic] to rectify and thus have contributed.

*Id*.

Plaintiffs claim that despite the consent decree, discrimination and retaliation continued during the 2011-12 school year. They allege:

> Jazmen Peterson and Dameka Cunigan were subjected to a continuous malicious campaign of racial and gender based bullying, harassment, and later retaliation by T.B., other students, and [Defendants] Kramer, Hill, Teusink, and Schneider. For instance, defendant Hill invaded Dameka's privacy by publishing confidential information seized from her locker. Defendants also conspired to deprive the plaintiff students of proper notice of a disciplinary hearing which resulted in their personal interests being harmed through expulsion.
>
> Specifically, instead of disciplining T.B. and the other students who perpetuated racist acts against Jazmen Peterson and Dameka Cunigan, Defendants Kramer, Hall, Teusink and Schneider, imposed disciplinary action against Jazmen Peterson and Dameka Cunigan, expelled them from [Kenton Ridge] HS and denied them procedural due process by failing to provide notice of the expulsion hearing to their counsel. By reason of lack notice to Jazmen Peterson and Dameka Cunigan were denied a meaningful

4

due process hearing prior to their expulsion from [Kenton Ridge] HS.
(Doc. #10, PageID at 147-48). In addition, Plaintiffs claim that Defendants violated the rights of Jazmen and Dameka by failing to do many things during most of the 2011-2012 school year. The Amended Complaint lists 15 things Defendants allegedly failed to do, including, for example, "a) Take immediate and appropriate action to investigage or otherwise determine the facts underlying their complaints; b) Conduct a prompt, thorough and impartial inquiry; c) Interview Jazmen Peterson and Dameka Cunigan, offending students, and witnesses and maintain written documentation of investigation; d) Communicate effectively with Jazmen Peterson and Dameka Cunigan regarding steps taken to end harassment; e) Check in with Jazmen Peterson and Dameka Cunigan to ensure that harassment has ceased; ..." (Doc. #10, PageID at 148).

Based on these allegations and their federal constitutional, statutory, and state-law claims, Plaintiffs seek compensatory and punitive damages, attorney fees and costs, prejudgment and postjudgment interest, and prospective injunctive relief.

## III.  <u>The School District and Treasurer Schneider</u>

Defendant contends that the Northeastern Local School District is an entity not capable of being sued – or *sui juris*. This is correct. Ohio statutory law dictates: "The board of education of each school district shall be a body politic and corporate, and, as such, capable of suing or being sue[d] ...." Ohio Rev. Code §3313.17. As a result, "[a] school district is not *sui juris,* rather it is the board of education which must be sued."

5

*Thompson v. Bd. of Educ.*, 2013 WL 6001626 at *3 (S.D. Ohio Nov. 12, 2013); *see Getachew v. Columbus City Sch.*, 2012 WL 748783 at *2 (S.D. Ohio Mar. 8, 2012) (and cases cited therein). Consequently, Plaintiffs' claims against Defendant Northeastern Local School District are not cognizable and subject to dismissal with prejudice.

Plaintiffs address this problem briefly, stating, "Although [Northeastern Local School District] is named as Defendants [sic], the Plaintiffs' claims should be regarded as claims against ..." the School District's Board of Education. (Doc. #21, PageID at 240). Citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), Plaintiffs argue (elsewhere in their Memo) that an official-capacity "claim against an individual equates to a claim against the entity or office employing the official ...." (Doc. #21, PageID at 242).

Plaintiffs are correct. It is not their claims against the School District that are cognizable; it is their claims against Defendants Kramer, Hill, Teusink, and Schneider in their official capacities that trigger the School Board's status as a defendant in this case. "Official-capacity suits ... 'generally represent ... another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal citations omitted). The potential liability of Defendants Kramer, Hill, Teusink, and Schneider in their officials capacity remains with the School Board. *See id.* Defendants, to their credit, recognize this. As a result, no unfair surprise

6

or other prejudice will befall Defendants by accepting Plaintiffs' official-capacity claims as claims against the School Board.[2]

Next, Plaintiffs assert in their Amended Complaint, "Defendant Schneider is [Northeastern Local School District] Treasurer and person responsible for issuance of notice of the purported suspension hearing." (Doc. #10, PageID at 146).

Defendants argue that Defendant Schneider, Board Treasurer, is not a proper party in this case. Defendants reason that under Ohio statutory law, only the school superintendent or principal has the power to suspend or expel a student and the Superintendent, not the Treasurer, must provide notice of the expulsion. This is consistent with the plain meaning of Ohio Rev. Code §3313.66(A) and (B). *See, e.g., Sellars v. Dublin City School Dist. Bd. of Edn.*, 2013-Ohio-3367, 2013 WL 3968172 (Oh. Ct. App., Aug. 1, 2013). In addition, the treasurer's duties, spelled out by statute, does not place the duty upon the treasurer to provide notice of student suspensions or make suspension decisions. Instead, the treasurer's job involves, not surprisingly, financial responsibilities: "The treasurer shall be the chief fiscal official of the school district, shall be responsible for the financial affairs of the district, and shall report to and is subject to the direction of the district board of education...." Ohio Rev. Code §3313.31(A). In addition, the treasurer "shall direct and assign employees directly engaged in the day-to-day fiscal operations of the district..., as those employees are so designated by the board

<hr>

[2] Defendants contend that Plaintiffs' claims against the School Board fail as a matter of law for reasons to be addressed below. *Infra*, §X.

of the district ...."  Ohio Rev. Code §3313.31(B).

Accordingly, to the extent Plaintiffs seek to impose liability upon Defendant Schneider for Dameka or Jazmen's expulsions, their claims fail as a matter of law.

**IV.**    **Plaintiffs Jacki and Kyle Peterson's Claims**

The Amended Complaint claims, in places, violations of Plaintiff Jazmen Peterson and Dameka Cunigan's federal constitution rights under 42 U.S.C. §1983.  (Doc. #10, PageID at 149, ¶s 21-22). In other places, the Amended Complaint seems to assert the violation of each Plaintiff's federal constitutional rights under §1983.  *Id*., PageID at 150, ¶27-28.  Reading Plaintiffs' Amended Complaint in their favor, Jacki and Kyle Peterson assert federal constitutional claims under §1983.

"In order to succeed on a § 1983 claim, a plaintiff must prove two elements: (1) that he was deprived of a right secured by the Federal Constitution or laws of the United States; and (2) that he was subjected to this deprivation by a person acting under the color of state law. 'By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.'" *Webb v. Greene Cnty. Sheriff's Office*, 494 F. Supp. 2d 779, 787-88 (S.D. Ohio 2007) (Rice, D.J.) (citing, in part, *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994); quoting, in part, *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000) (other citation omitted)).

Jacki and Kyle Peterson's claims under §1983 fail as a matter of law.  "It is well established in this Circuit that 'a section 1983 cause of action is entirely personal to the

direct victim of the alleged constitutional tort.'" *Foos v. City of Delaware*, 492 Fed.

Appx. 582, 592 (6th Cir. 2012) (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th

Cir. 2000))(other citations omitted). To the extent that Plaintiffs Jacki and Kyle Peterson

base their §1983 claims on the alleged violation of their daughter and niece's

constitutional rights, neither Jacki nor Kyle Peterson have alleged any facts capable of

indicating any of their own constitutional rights were violated. For example, while

"parents have a liberty interest in the care, custody, and control of their children," *Jenkins*

*v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 590 (6th Cir. 2008)(citations omitted), neither

Jacki nor Kyle Peterson have set forth any factual allegations indicating they lost the care,

custody, or control of their daughter Jazmen or their niece Dameka. *See also Galloway v.*

*Chesapeake Union Exempted Vill. Schs. Bd. of Educ.*, 2012 U.S. Dist. LEXIS 152080

(S.D. Ohio Oct. 23, 2012) (Black, D.J.) (citing *Jenkins*, 513 F.3d 590-91).

Accordingly, Plaintiffs have failed to raise a plausible claim that Defendants are

liable under §1983 for a violation of Plaintiffs Jacki or Kyle Peterson's constitutional

rights.

## V.     The Parties' Main Contentions and Rule 12(c)

Defendants contend that, in addition to numerous other problems, Plaintiffs'

Amended Complaint is "replete with conclusory allegations that they were unlawfully

harmed." (Doc. #16, *PageID* at 185). Defendants contend that they are entitled to

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) for numerous reasons: (1)

9

Plaintiffs fail to plead sufficient facts against the Board of Education; (2) Plaintiffs fail to plead plausible constitutional claims; (3) qualified immunity shields the individual Defendants from personal liability; (4) Plaintiffs' Title VI claim and state-law claims fail as a matter of law; and (5) Plaintiffs' punitive damages claim are unsupported by facts showing actual malice and otherwise fail as a matter of law. Defendants seek dismissal of Plaintiffs' claims with prejudice.

Plaintiffs argue that they have alleged federal and state-law claims "based upon Defendants fostering and tolerating a racially hostile and discriminatory environment in both [the Northeastern Local School District and Kenton Ridge HS], bullying, gender harassment and state law claims for intentional infliction of emotional distress and loss of consortium." (Doc. #21, PageID at 226).

Notice pleading is alive in the United States Courts; the "hypertechnical code pleading regime of a prior era ...," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), is not. Notice pleading rests on the foundational requirement that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests ...." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (quoting, in part, Fed. R. Civ. P. 8(a)(2); other citation omitted).

The notice-pleading standards that apply to resolving motions to dismiss under Fed. R. Civ. P. 12(b)(6) also apply to resolving motions for judgment on the pleadings

under Fed. R. Civ. P. 12(c). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001); *see Vandenheede v. Vecchio*, 541 Fed. App'x 577, 578-79 (6th Cir. 2013).

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Jasinski*, 729 F.3d at 538 (quoting *Iqbal,* 556 U.S. at 678). Factual allegations need not be detailed but must be "enough to raise a right to relief above the speculative level ...." *Twombly*, 550 U.S. at 555. "Where complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotations omitted).

When considering the facial plausibility of a complaint, the Court accepts as true its factual allegations but not its legal conclusions. *Id*. "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Thus, "'a legal conclusion couched as a factual allegation' need not be accepted as true ...." *Fritz v. Charter Tp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting, in part, *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009) (quoting, in turn, *Twombly,* 550 U.S. at 555)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

**VI.    Equal Protection:**
**Plaintiffs Jazmen Peterson and Dameka Cunigan's Claims**

Plaintiffs' Amended Complaint asserts that Defendants violated Jazmen Peterson

and Dameka Cunigan's rights under the Equal Protection Clause of the Fourteenth

Amendment to the Constitution.

The Equal Protection Clause provides, "No state shall make or enforce any law

which shall ... deny to any person within its jurisdiction the equal protection of the laws."

In order "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff

must allege that a state actor intentionally discriminated against the plaintiff because of

membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341

(6th Cir. 1990); *see Washington v. Davis*, 426 U.S. 229, 243 (1976).  To state a plausible

Equal-Protection claim, Plaintiffs' Amended Complaint must set forth non-conclusory

facts sufficient to raise a reasonable inference that Defendants' acted or failed to act with

a "racially discriminatory intent with their response to the student-on-student

harassment."[3]  *Williams v. Port Huron Sch. Dist.*, 455 Fed. App'x 612, 618-19 (6th Cir.

2012) (citing *Gant ex rel. Gant v. Wallingford Bd. of Educ.,* 195 F.3d 134, 139-40 (2d

Cir. 1999)); *see Iqbal,* 556 U.S. at 678; *see also Jasinski*, 729 F.3d at 538.  Discriminatory

intent hinges on whether the factual allegations, accepted as true, show that "Defendants

---

[3]  Citing an unpublished decision by the Sixth Circuit is warranted here because it rests on *Gant*, a published Second Circuit case, and because the deliberate indifference standard described in *Williams* is based, and the same as, the standard published in other Sixth Circuit Title IX cases.  *Williams*, 455 Fed. App'x at 618, n.6 (citing *Williams v. Paint Valley Local Sch. Dist*., 400 F.3d 360, 369 (6th Cir. 2005).

have been deliberately indifferent to the allegations of student-on-student racial harassment. 'Deliberate indifference to discrimination can be shown from a defendant's actions or inaction in light of known circumstances.'" *Williams*, 455 Fed. App'x at 618 (footnote omitted) (quoting, in part, *Gant*, 195 F.3d at 141).

"[A] plaintiff may demonstrate defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Vance v. Spencer Cnty. Pub. Sch. Dist.,* 231 F.3d 253, 260 (6th Cir. 2000) (quoting *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 648 (1999)).

Plaintiffs Jazmen Peterson and Dameka Cunigan's Equal-Protection claim begins by realleging and incorporating the prior statements set forth under the heading, "Facts Common to All Counts." *Id*., PageID at 146-49. Accepting those facts as true, Superintendent Kramer, Principal Hill, and Assistant Principal Teusink knew about the threatening content of the "racially-charged documents" student T.B. posted on Plaintiff Dameka Cunigan's locker. (Doc. #10, PageID at 147). Those documents included the document attached to the Amended Complaint. It contains a racial slur – significantly, spelling out the n-word – and an insult and a racially-charged threat to hang "Damica," reasonably understood to be Plaintiff Dameka Cunigan. The Amended Complaint alleges, "T.B.'s actions were the subject of frequent and timely reports to Defendant Kramer, Hill, and Teusink by Plaintiffs' Jackie and Kyle Peterson." *Id*. And those

reports allegedly led to "a consent decree with the United States Department of Justice ... to resolve allegations of racial harassment against Black students at ..." Kenton Ridge H.S. (Doc. #10, PageID at 147). Yet despite the consent decree and its remedial measures, T.B. and other students continued their racially discriminatory conduct towards Dameka and Jazmen throughout most of the 2011-2012 school year. Plaintiffs allege that retaliation also occurred as shown by the fact, which must be accepted as true, that Defendant Hill "published confidential information seized from [Dameka's] locker." (Doc. #10, PageID at 148). And both Jazmen and Dameka were expelled while "T.B. and other student who perpetrated the racists acts ..." were not disciplined. *Id*. And despite Defendants' knowledge of the racial harassment, it must be further accepted as true – as the Amended Complaint asserts – that Superintendent Kramer, Principal Hill, and Assistant Principal Teusink failed to take many preventative or corrective actions. They did not, for instance, "[t]ake immediate and appropriate action to investigate or otherwise determine the facts underlying [Jazmen's and Dameka's] complaints," or "conduct a prompt, thorough and impartial inquiry ...." *Id*. And the list of possible immediate and appropriate actions that Defendants allegedly did not do continues at length in the Amended Complaint. "[D]rawing on ... judicial experience and common sense," *Iqbal*, 556 U.S. at 679, the failure to take at least some of those actions supports the reasonable inference that Defendants Kramer, Hill, and Teusink were deliberately indifferent to the intentional racial harassment that Dameka and Jazmen endured at the insistence of T.B.

14

and other students throughout most of the 2011-2012 school year. *Cf. Williams*, 455 Fed.

App'x at 618-20 (describing, at summary judgment, the 12 actions a school principal took

that revealed he was not deliberately indifferent to student-on-student racial harassment,

such as setting up video surveillance where the harassment occurred, giving a

presentation over the school's video system regarding inappropriate behavior, and

"expel[ling] a student who created a racist poster.").

     Defendants contend that Plaintiffs rely on "nothing more than the 'unadorned, the

defendant-unlawfully-harmed-me accusation' that the Supreme Court rejected in *Iqbal*,

556 U.S. at 668." (Doc. #16, PageID at 197). The Amended Complaint does not rely on

such unadorned facts or mere "'formulaic recitation of the elements ...,'" *Iqbal*, 556 U.S.

at 681 (quoting *Twombly*, 550 U.S. at 555 of Plaintiffs' Equal-Protection claim). The

Amended Complaint goes further by raising sufficiently specific allegations, when taken

as true, to demonstrate that Defendant Kramer, Hill, and Teusink intentionally

discriminated against Plaintiffs by not taking any meaningful action in response to the

specific and repeated reports of racial harassment by Plaintiffs Jacki and Kyle Peterson.

Such actions were necessary due to T.B.'s alleged acts of racial harassment and threats,

plus his alleged posting of racially-charged documents on Dameka's locker – such as the

one attached to the Amended Complaint – plus the alleged facts that T.B. and other

students engaged in "constant and aggressive racially charged and gender based actions

...," plus these Defendants' alleged failure to take any number of immediate and

appropriate actions to stop or correct the students' racially discriminatory misconduct and, finally, these Defendants' act of expelling Jazmen and Dameka. *Cf. Williams*, 455 Fed. App'x at 618-20. Such allegations give fair notice to Defendants about the factual allegations underlying Plaintiffs' Equal-Protection claim. *See Erickson v. Pardus,* 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; internal quotations omitted))

Accordingly, taking the allegations in the Amended Complaint as a whole including the attached "racially-charged" document, Plaintiffs Jazmen Peterson and Dameka Cunigan have set forth short and plain statements showing they are entitled to relief. *See Twombly*, 550 U.S. at 555.

## VII.  <u>Title VI</u>

Pursuant to Title VI, 42 U.S.C. § 2000d, Civil Rights Act of 1964, 42 U.S.C. §2000d (Title VI), "[n]o person in the United States shall, on the grounds of race, color, or national origin, be excluded from participating in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."

Plaintiffs claim in their Amended Complaint that "Defendants, jointly and severally, discriminated and retaliated against Plaintiffs, including but not limited to, treating them differently than similarly situated white students because of their race, in

violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, et seq." (Doc. #10, *PageID* at 150).

Defendants contend that Plaintiffs' Title VI claims are inadequately pled because they have not explained how the alleged conduct was sufficiently severe, pervasive, and objectively offensive that it deprived Jazmen and Dameka of educational opportunities. Plaintiffs did not specifically address this contention in their Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings.

"Title VI and Title IX parallel one another except that Title VI prohibits race discrimination while Title IX prohibits sex discrimination. *Thompson v. Ohio State Univ.*, __F.Supp.2d___, 2:12-CV-1087, 2014 WL 32257 (S.D. Ohio Jan. 6, 2014) (Frost, D.J.); *see also Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 286 (1998). Consequently, the standards applicable under Title IX to student-on-student sexual harassment set forth in *Davis* apply to Plaintiffs' Title VI claims. *See Cleveland v. Blount County Sch. Dist. 00050*, 2008 U.S. Dist. LEXIS 6011, at *28-29 (E.D. Tenn. Jan. 28, 2008); *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty.*, 334 F.3d 928, 934 (10th Cir. 2003); *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 2014 U.S. App. LEXIS 3864 (5th Cir. Tex. 2014).

Defendant Board of Education, like other recipients of federal funding, "may be liable for 'subjecting' [its] students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student harassment and the harasser is under the

school's disciplinary authority." *Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629, 646-47 (1999). To state a student-on-student harassment claim against a school, the plaintiff must show: (1) the harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the defendant had actual knowledge of the harassment; and (3) the defendant was deliberately indifferent to the harassment. *Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 258-59 (6th Cir. 2000).

As discussed above, Dameka Cunigan has alleged that T.B. posted on her locker racially-charged documents like the one attached to the Amended Complaint, which contained a racially-charged death threat and other racially-charged content. When crediting these and the other allegations discussed previously, *supra*, §§II, VI, Plaintiffs have alleged sufficiently specific facts to give Defendants fair notice of the factual basis of Plaintiffs' Title VI claim. Indeed, "one incident can satisfy a claim ..." of student-on-student harassment. *Vance*, 231 F.3d at 259 and n.4. Perhaps most significantly, not only have Plaintiffs alleged that Jazmen and Dameka suffered severe, pervasive, and objectively offensive racial threats and harassment over the course of nearly an entire school year, they allege that school administrators failed to take steps to prevent, stop, and correct the harassment despite repeated reports about it from parents Jacki and Kyle Peterson. *Cf. Vance*, 231 F.3d at 259 ("In this case, it is undisputed that [Defendant] Spencer had actual knowledge. Both Alma and her mother made repeated reports to

Spencer. Alma informed both her teachers and principals. Alma's mother made repeated reports verbally and in writing, not to mention her Title IX complaint filed with the school.").

Defendants contend that Plaintiffs Jazmen Peterson's Title VI claim of retaliation is "particularly baseless as there is no allegation that she engaged in protective activity or complained of race based harassment." (Doc. #16, PageID at 207).

In order to raise a plausible claim of retaliation, Plaintiffs must allege facts giving rise to a reasonable inference that Defendants retaliated against Plaintiffs because one or more of them reported racial threats and harassment to school officials. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005). Contrary to Defendants' view of the Amended Complaint, it alleges sufficient facts to raise a plausible claim of Title VI retaliation. In addition to the above-described allegations concerning threats and racial harassment, and Defendants receipt of repeated reports and resulting knowledge about the threats and racial harassment, the Amended Complaint alleges that Defendants retaliated against Jazmen and Dameka by imposing disciplinary action against them and expelling them without disciplining students who committed racist acts. Given that the reports by Jazmen's parents and Dameka's guardians allegedly led to a consent decree between the Northeastern Local School District and the U.S. Justice Department, it is reasonable to infer the existence of protected activity by Plaintiffs that resulted in expulsion of Jazmen and Dameka from school.

Turning to Plaintiffs Jacki and Kyle Peterson, they are not the intended

beneficiaries of federal funding sent to the Defendant Board of Education. Only students

in public schools, like Jazmen and Dameka, are intended Title VI beneficiaries. *See* 42

U.S.C. §2000d; *see also Karlen v. Westport Bd. of Educ.*, 638 F.Supp.2d 293, 301 (D.

Conn., July 29, 2009); *cf. Phillips v. Anderson County Bd. of Educ.*, 2006 U.S. Dist.

LEXIS 92120, 13-14 (E.D. Tenn. Dec. 19, 2006)(parents lack standing to assert Title IX

claim).

Alternatively, if the Court concludes that Plaintiffs' Title VI claim should be

dismissed based on their failure to specifically respond to Defendants' arguments,

dismissal of this claim should be without prejudice to give Plaintiffs an opportunity to

submit a Motion to File a Second Amended Complaint.

## VIII. **Due Process**

### A. **Substantive Due Process**

The Fourteenth Amendment's guarantee of "substantive due process prohibits the

government's abuse of power or its use for the purpose of oppression ...." *Howard v.

Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996).

> Substantive due process serves as a vehicle to limit various aspects
> of potentially oppressive government action. For example, it can serve as a
> check on legislative enactments thought to infringe on fundamental rights
> otherwise not explicitly protected by the Bill of Rights; or as a check on
> official misconduct which infringes on a "fundamental right;" or as a
> limitation on official misconduct, which although not infringing on a
> fundamental right, is so literally "conscience shocking," hence oppressive,
> as to rise to the level of a substantive due process violation.

*Grinage*, 82 F.3d at 1349.

Plaintiffs claim, "Defendants['] actions, in failing to intervene on the behalf of the plaintiff students who were racially harassed by [Kenton Ridge H.S.] students and staff was so reprehensible that it is shocking to the conscience and violative of the right to substantive due process secured by the Fourteenth Amended to the United States Constitution ...." (Doc. #10, PageID at 150). They contend, "Defendants violated their substantive due process rights not only by failing to protect them from racial harassment and bullying of other students, but also creating an environment where it was customary for Blacks to be harassed with impunity." (Doc. #21, PageID at 238).

To plead a facially plausible claim under the "shocks the conscience" component of the Substantive Due Process Clause, Plaintiffs' allegations, when accepted as true must demonstrate more than mere negligence. *Hunt v. Sycamore Cnty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 535 (6th Cir. 2008). Instead, it is "conduct 'intended to injure in some way unjustifiable by any governmental interest is the sort of official action most likely to rise to the conscience-shocking level.'" *Id.*, 542 F.3d at 535 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). Conduct that involves "recklessness, gross negligence, or deliberate indifference, may or may not be shocking depending upon the context. 'Deliberate indifference that shocks in one environment may not be so patently egregious in another, and [the] concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of

power is condemned as conscience shocking.'" *Hunt*, 542 F.3d at 535 (quoting, in part,

*Lewis*, 523 U.S. at 850).

> [W]hen executive action is worse than negligent but was not done for the purpose of injuring someone or in furtherance of invidious discrimination, *Lewis* and later cases interpreting it have identified several considerations that bear on whether the action will be considered arbitrary, including: (1) the voluntariness of the relationship between the government and the plaintiff, especially whether the plaintiff was involuntarily in government custody or was voluntarily a government employee; (2) whether the executive actor was required to act in haste or had time for deliberation; and (3) whether the government actor was pursuing a legitimate governmental purpose.

*Hunt*, 542 F.3d at 536 (citing *Upsher v. Grosse Pointe Pub. Sch. Sys.,* 285 F.3d 448, 453

(6th Cir. 2002)).

Defendants contend that Plaintiffs have failed to set forth a plausible substantive

due-process claim based on "conscience shocking" allegations. Defendants support this

contention by identifying what they see as the two allegations Plaintiffs raise: (1) that

Plaintiffs' attorney was not provided notice of the expulsion hearing, and (2) that

Principal Hill divulged information found in [Dameka] Cunigan's old locker to "third

parties." (Doc. #23, PageID at 260). Defendants then reason that neither of these

allegations approaches the level of conscience shocking necessary to state a plausible

substantive due process violation.

Defendants, however, have not specifically addressed the allegations in Plaintiffs'

Amended Complaint that, if credited as true and construed in Plaintiffs' favor, support

their claim that Defendants acted with the purpose of creating "an environment where it

was customary for Blacks to be harassed with impunity." (Doc. #21, PageID at 238; *see* Doc. #16, PageID at 198-99; Doc. #23, PageID at 259-60). Without a present contrary argument by Defendants, Plaintiffs' factual allegations, reviewed above, *supra*, §§II, VI, reveal that Defendants were deliberately indifferent to the ongoing racial harassment inflicted upon Dameka and Jazmen, even though their parents had repeatedly reported the harassment to school officials. *Cf. McQueen v. Beecher Cnty. Sch.*, 433 F.3d 460, 469 (6th Cir. 2006) ("We have equated deliberate indifference with subjective recklessness, which means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference[.]'" (citations omitted). In addition, Plaintiffs' allegations, when accepted as true and construed in their favor, are sufficiently specific to demonstrate that Defendants' acts and omissions were worse than negligent and, instead, were done for the purpose of injuring Jazmen and Dameka "in furtherance of invidious discrimination." *Hunt*, 542 F.3d at 536.

Accordingly, Defendants are not entitled to Judgment in their favor on Plaintiffs Dameka Cunigan and Jazmen Peterson's "conscience shocking" theory under the Substantive Due Process Clause.[4]

---

[4] In light of this conclusion, and the need for Plaintiffs' substantive due-process claim to go forward, it is unnecessary to presently address Defendants' challenges to Plaintiffs' failure-to-protect theory under the Substantive Due Process Clause. Neither will the cost of discovery significantly increase nor will any significant delay result from presently declining to address Defendants' challenges.

## B.    Procedural Due Process

Plaintiffs' Amended Complaint asserts, "Defendants['] actions, jointly and severally, have violated Plaintiffs' right to procedural due process as secured by the Fourteenth Amendment to the United States Constitution and enforced through 42 U.S.C. § 1983, by failing to provide [them] proper notice of the expulsion hearing and notifying their counsel."  (Doc. #10, PageID at 150).  The Amended Complaint further alleges that Plaintiffs "had a right to Notice of the disciplinary hearing against them and to be represented by counsel.  Defendants intentionally failed to provide notice notwithstanding their awareness that the students were represented by counsel.  This failure was calculated to deprive [them] of a meaningful disciplinary hearing and an effective opportunity to be heard."  *Id*.

Defendants contend that Plaintiffs fail to plead a plausible procedural due-process claim because "[u]pon close inspection, the Court will find that the plaintiffs' complaint does not actually include an allegation that the plaintiffs failed to receive notice and an opportunity to be heard for due process purposes."  (Doc. #16, PageID at 200).

Tellingly, Plaintiffs have not specifically responded to this contention or otherwise opposed Defendants' effort to obtain Judgment in their favor on Plaintiffs' procedural due-process claim.  *See* Doc. #21, PageID at 236-47.  It appears, therefore, that Plaintiffs might agree with Defendants' characterization of this claim.  In the event Plaintiffs do not agree with Defendants' characterization, it will be more efficient from a case-

24

management perspective to permit them a brief time to file a second amended complaint to more plainly set forth the factual basis for their procedural due-process claim.

## IX.   Qualified Immunity

Plaintiffs raise their claims against Defendants Kramer, Hill, and Teusink in their individual or personal capacities.  (Doc. #10, PageID at 146).

Defendants contend that qualified immunity shields the individual Defendants from personal liability because Plaintiffs have failed to allege facts to make out a violation of a constitutional right.  They further argue that "existing case law does not support a constitutional claim based on the failure of the school employee to protect a student from bullying in circumstances such as those alleged in this case."  (Doc. #16, PageID at 202).

To surmount Defendants' assertion of qualified immunity, Plaintiffs' "facts as alleged must show that [a] defendant violated a constitutional right and that the right was clearly established, but the analysis need not proceed in that order.  *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 871 (6th Cir. 2012) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  "A right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Sutton*, 700 F.3d at 871 (quoting, in part, *Saucier,* 533 U.S. at 202).

As discussed previously, Plaintiffs' Amended Complaint sets forth more than one

facially plausible constitutional claim.  *Supra*, §§VI, VIII.  And, as explained in *Thompson*, "Defendants cannot seriously argue that a reasonable university [here, a reasonable high school] official would not have known that taking disciplinary action against a student based on racial animus was a violation of the student's rights to equal protection under the law." __F. Supp.2d at __, 2014 WL 32257 at * 12.  Additionally, based on the previous analysis, Plaintiffs have raised plausible claims that the individual Defendants violated the clearly established law under the Equal Protection Clause and the Substantive Due Process Clause due to their decision not to stop, prevent, or correct the student-on-student threats, racial harassment and bullying despite the repeated reports of such conduct by parents Jacki and Kyle Peterson.  *Supra*, §VI, VIII (and cases cited therein).

Accordingly, accepting Plaintiffs' allegations as true and construing the Amended Complaint in their favor, qualified immunity does not shield Defendants Kramer, Hill, and Teusink, in their personal capacities, from Plaintiffs' equal-protection and substantive due-process claims.

## X.    **Defendant Board of Education**

Plaintiffs also raise their claims against Defendants Kramer, Hill, and Teusink in their official capacities.  (Doc. #10, PageID at 146).

Defendants acknowledge that Plaintiffs claims against the individual Defendants in their official capacities are essentially claims against the School Board.  These claims

against the Board of Education fail, in Defendants' view, because the Amended Complaint raises only conclusory allegations and because Plaintiffs fail to plead facts raising a reasonable inference that the School Board is liable for the alleged misconduct. Defendants maintain that the Amended Complaint "alleges <u>no</u> facts from which the Court could conclude that it is 'plausible' that the Board of Education maintains a custom and practice of discriminating against its students." (Doc. #16, PageID at 195 (emphasis in original)).

"A municipal liability claim against ... the School Board must be examined by applying a two-pronged inquiry: (1) Whether [Plaintiffs have] asserted the deprivation of a constitutional right at all; and (2) Whether ... the School Board is responsible for that violation." *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 505-06 (6th Cir. 1996) (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 120 (1992)).

The first inquiry has been answered above in the affirmative. The second inquiry is therefore the proper analytical focal point.

The School Board cannot be held liable under §1983 based on a theory of respondeat superior. *Claiborne Cnty*, 103 F.3d at 507 (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978)). The School Board itself must be the wrongdoer. *Id*. The School Board itself is not potentially liable under §1983 unless Plaintiffs have alleged facts upon which it can be reasonably inferred that the School

Board executed an official policy or tolerated a custom within the school district that caused a violation of Plaintiffs' constitutional rights. *See Claiborne Cnty*, 103 F.3d at 507 (discussing *Monell,* 436 U.S. at 690–91); *see also McCoy v. Bd. of Educ., Columbus City Schools*, 515 Fed. Appx. 387, 393 (6th Cir. 2013). "A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Claiborne Cnty*., 103 F.3d at 393 (quoting *Monell* 436 U.S. at 691).

In response to Defendants' no policy/custom arguments, "Plaintiffs argue that the Amended Complaint alleges that the Northeastern Local School District and Kenton Ridge HS "have a history of nonracial pluralism and a custom of tolerating racially based assaults against Black students." (Doc. #21, PageID at 240). Plaintiffs do not explain what they mean by "a history of nonracial pluralism," *see id*., and the phrase is cryptic at best, nonsense at worst. They are apparently referring to their allegation in the Complaint that Defendants' "failure to take active and effective measures to protect Dameka and Jazmen from racist taunts and racial epithets was pursuant to a longstanding custom of racial intolerance, racial nonpluralism and discrimination that permeates [Kenton Ridge] HS of which [D]efendants are aware, have been loathe to rectify and thus have contributed." (Doc. #10, PageID at 147, ¶17). "Racial nonpluralism" makes more definitional sense than "nonracial pluralism" since it implies or refers directly to racial discrimination.

28

More significantly, by referring to Defendants – plural – Plaintiffs include the Northeastern Local School District, and hence its School Board, *see supra*, §III, as one the alleged wrongdoers that caused the constitutional violations at issue. Plaintiffs' references to the many specific things Defendants, plural (hence the School Board) failed to do in response to the repeated reports of racial harassment of Dameka and Jazmen is sufficient to raise a reasonable inference that the School Board knowingly tolerated racial discrimination and unconstitutional conduct at Kenton Ridge HS over the course of nearly the entire 2010-2011 school year. Given the ongoing and lengthy nature of the unconstitutional conduct plus its threatening and explicitly racial nature, the Board's toleration of it over time, Plaintiffs have alleged the type of "'custom' for purposes of *Monell* liability" that is "'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Claiborne Cnty.*, 103 F.3d at 393.

Accordingly, Defendant School Board is not entitled to Judgment in its favor on Plaintiff Dameka Cunigan and Jazmen Peterson's §1983 claims.

## XI.  State-Law Claims

### A.  Intentional and Negligent Infliction of Emotional Distress

Plaintiffs allege that Defendants committed the tort of intentional infliction of emotional distress upon Jacki Peterson and Dameka Cunigan. They further allege that Jacki and Dameka have been required to receive extensive medical counseling and treatment.

Defendants argue that this claim should be dismissed because Jacki Peterson has "alleged no facts that could lead a reasonable factfinder to conclude that Defendants took some affirmative act with the intent to harm <u>Mrs. Peterson</u>." (Doc. #23, PageID at 265-66) (emphasis in original).

In Ohio, four elements comprise the tort of intentional infliction of emotional distress in Ohio:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Talley v. Family Dollar Stores of Ohio*, *Inc.*, 2008 U.S. App. LEXIS 19342, *25-26 (6th Cir. 2008)(internal quotation marks and citations omitted); *see Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

It appears in light of the above-discussed allegations, Plaintiffs might well have pled sufficient facts to raise reasonable inferences consistent with elements one through three in support of their claim of intentional infliction of emotional distress. However, the Amended Complaint fails to contain sufficient factual allegations necessary to support a reasonable inference that Plaintiffs Jacki Peterson and Dameka Cunigan suffered emotional distress that was "serious and of such a nature that no reasonable person could be expected to endure it." *Talley*, 2008 U.S. App. LEXIS 19342, *25-26.

Turning to Plaintiffs' claim for negligent infliction of emotional distress, they allege "Defendants acting, jointly and severally, failed to take appropriate action against T.B. and others and wrongfully expelled [them] from [Kenton Ridge] HS." (Doc. #10, PageID at 152).

Under Ohio law, in order to recover for negligent infliction of emotional distress in the absence of a contemporaneous physical injury, a plaintiff must have "either witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Heiner v. Moretuzzo*, 73 Ohio St. 3d 80, 86-87 (1995). Plaintiffs do not allege Defendants caused them any physical harm, and they do not allege they witnessed or experienced a dangerous accident or were in fear of a physical peril. To the extent Plaintiffs may be attempting to base their claim for negligent infliction of emotional distress upon allegations that Defendants failed to properly address the behavior of students who were harassing them, the Supreme Court of Ohio has specifically rejected such reasoning. *Heiner*, 73 Ohio St. 3d at 85 (rejecting broad interpretation of case law that would otherwise permit a plaintiff to maintain a cause of action for negligent infliction of emotional distress any time the plaintiff's emotional injuries are serious and a reasonably foreseeable consequence of the defendant's negligence, regardless of whether a physical peril existed).

Accordingly, Plaintiffs have not raised a facially plausible claim of intentional or negligent infliction of emotional distress. However, given the allegedly severe and

outrageous conduct Dameka and Jazmen experienced, Plaintiffs should be given a brief opportunity to submit a Motion to File a Second Amended Complaint to plead more specific facts in support of their claim of intentional infliction of emotional distress.

## B.     Invasion of Privacy

Plaintiffs bring a claim for invasion of Dameka Cunigan's privacy. They allege, "Defendant Hill without privilege or justification, entered Dameka Cunigan's student locker, reviewed her personal journal and communicated details of Dameka Cunigan's life to third persons." (Doc. #10, PageID# 148).

"In Ohio, the tort of invasion of privacy includes four distinct causes of action: (1) intrusion into plaintiff's seclusion, solitude, or private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places plaintiff in a false light; and (4) appropriation of plaintiff's name or likeness for defendant's advantage." *Yoder v. Ingersoll-Rand Co.*, 1998 U.S. App. LEXIS 31993 at *5 (6th Cir. 1998) (internal citations omitted).

Plaintiffs appear to bring a claim for invasion of privacy based on the "public disclosure" cause of action. "[T]he public disclosure variety of the tort of invasion of privacy has at least three requirements: (1) a clearly private fact; (2) public disclosure of the private fact; and (3) a showing that the matter made public is one which would be highly offensive and objectionable to a reasonable person." *Yoder*, 1998 U.S. App. LEXIS at *6 (internal citations omitted). As discussed in *Yoder*, the Ohio Court of

Appeals defines "'publicity, as used in the first prong, [to] mean[] 'communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to 'publication' [as used in defamation cases and] meaning any communication by the defendant to a third person.'" *Yoder*, 1998 U.S. App. LEXIS 31993 at *6-*7 (quoting *SETA v. Reading Rock, Inc.*, 100 Ohio App. 3d 731, 654 N.E.2d 1061, 1068 (Ohio Ct. App. 1995) (brackets in original)). The Restatement of Torts also provides this distinction.[5]

Although Plaintiffs allege that Defendant Hill entered Dameka's school locker without justification, reviewed her personal journal, and communicated details of her private life to "third persons" (Doc. #10, PageID at 151), the Amended Complaint fails to add further supporting facts. The Amended Complaint does not contain sufficient facts to raise a reasonable inference that Defendant Hill disclosed "clearly private" details about Dameka. Likewise, while Defendant Hill allegedly communicated such details to third persons, such an allegation alone is not sufficient to raise a reasonable inference that the details were communicated to the "public at large," or to "so many persons that the matter must be regarded as substantially certain to become one of public knowledge...." *Yoder*,

_____

[5] "'Publicity,' as it is used in this Section, differs from 'publication,' as that term is used . . . in connection with liability for defamation. 'Publication,' in that sense, is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . . Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Yoder*, 1998 U.S. App. LEXIS 31993 at *7 (quoting RESTATEMENT (SECOND) OF TORTS § 652D, comment a).

1998 U.S. App. LEXIS 31993 at *6-*7. "[I]t is not an invasion of privacy to disclose an

embarrassing fact to a single person or even a small group of persons." *Id.*, 1998 U.S.

App. LEXIS 31993 at *3 (quoting RESTATEMENT (SECOND) OF TORTS § 652D,

comment a)(emphasis omitted).

Accordingly, Plaintiffs' Amended Complaint fails to set forth a plausible claim for

invasion of Dameka Cunigan's privacy.

C.      **Loss of Consortium**

Plaintiffs assert a claim of loss of consortium. They allege, "[a]s a direct and

proximate result of the injuries to Jacki Peterson caused by Defendants, Kyle Peterson has

been deprived and will continue to be deprived of the services, society, comfort,

companionship and the marital relationship of Jacki Peterson." (Doc. #10, PageID at

152).

In Ohio, "'[A] claim for loss of consortium is derivative in that the claim is

dependent upon the defendant's having committed a legally cognizable tort upon the

spouse who suffers *bodily injury*.'" *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d

776, 791 (6th Cir. 2007) (emphasis in original) (quoting *Bowen v. Kil-Kare, Inc.*, 63 Ohio

St. 3d 84, 585 N.E.2d 384, 392 (Ohio 1992)). Because Plaintiffs have not presented a

plausible state-law claim, their Amended Complaint fails to set forth a derivative loss-of-

consortium claim. *See id*.; *see also Monak v. Ford Motor Co.*, 95 F. App'x 758, 768 (6th

Cir. 2004) ("A claim for loss of consortium is a derivative action that does not exist

absent a primary claim").  And, Plaintiffs do not allege facts indicating that Defendants caused either Jacki or Kyle Peterson bodily injury.  *See Campbell*, 509 F.3d at 791 ("Ohio courts have repeatedly held that the term 'bodily injury' does not include nonphysical harms."); *see also Varney v. InfoCision, Inc.*, 2013 U.S. Dist. LEXIS 143324 (S.D. Ohio, October 2, 2013) (dismissing plaintiff's loss of consortium claim as there is no allegation plaintiff's wife suffered bodily injury due to defendant's actions).

Accordingly, Plaintiffs' Amended Complaint fails to set forth a plausible loss-of-consortium claim.

## XII.  Summary

For the above reasons, Defendants' Motion for Judgment on the Pleadings is well taken as to the following claims:

1.  Plaintiffs Jacki and Kyle Peterson's §1983 claims;

2.  Plaintiffs claims against Defendant Schneider to the extent they seek to hold her liable for Dameka Cunigan or Jazmen Peterson's expulsions;

3.  Plaintiff Jacki and Kyle Peterson's claims under Title VI, 42 U.S.C. §2000d, *et seq.*;

4.  Plaintiffs' claims against Defendant Northeastern Local School District; and

5.  Plaintiffs' state-law claims of intentional and negligent infliction of emotional distress, invasion of privacy, and loss of consortium.

For the above reasons, Defendants' Motion for Judgment on the Pleadings lacks merit in remaining part.  As a result, the following claims survive and remain pending:

1.       Plaintiffs Dameka Cunigan and Jazmen Peterson's §1983 claims against Defendant Board of Education based on purported violations of their rights under the Equal Protection Clause and the Substantive Due Process Clause, and their claims under Title VI, 42 U.S.C. §2000d, *et seq*.; and

2.       Qualified immunity does not shield the individual Defendants from potential personal liability on Plaintiffs Dameka Cunigan and Jazmen Peterson's surviving §1983 claims.

A few final notes: Plaintiffs' Amended Complaint is not a model of perfection and neither is their Memorandum in Opposition. Despite this, the Amended Complaint, satisfies modern notice-pleading standards as to some claims, as described herein. Additionally, although Defendants properly recognize that Plaintiffs' factual allegations must be accepted as true at this point in the case, they sometimes also offer differing version of specific events, which the undersigned has not considered when ruling on their Motion for Judgment on the Pleadings. For instance, Defendants explain that the racially-charged "notes actually were placed in the locker out of view of other students. It remains unknown who put the notes in the plaintiffs' locker, because the male student who the plaintiffs accuse of this action actually passed a police polygraph examination as well as a police handwriting analysis, as plaintiffs are well aware." (Doc. #16, PageID at 185, n.2). Defendants have also accused Plaintiffs of making "false, derogatory and harmful statements against individuals who dedicate their lives and careers to the well-being of children without any factual support." *Id*., PageID at 188, n.3. It remains for discovery, summary judgment, and trial (if warranted) – rather than a motion for judgment on the pleadings – to sort out such allegations.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Defendants' Motion for Judgment on the Pleadings (Doc. #16) be
    GRANTED in part and DENIED in part as set forth herein; and

2.  This case remain pending on the docket of this Court.

May 20, 2014

                                          s/Sharon L. Ovington
                                    _____
                                        Sharon L. Ovington
                              Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).