IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAZMEN PETERSON, et al,          :

       Plaintiffs,

    v.                               :

LOUIS A. KRAMER, et al,

       Defendants.                  :

Case No. 3:13-cv-187

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANTS JOHN HILL,
LOUIS A. KRAMER, AND ALLYSON TEUSINK'S MOTION FOR
SUMMARY JUDGMENT (DOC. #52) AND OVERRULING AS MOOT
DEFENDANTS' PRE-TRIAL MOTION FOR DISCOVERY SANCTIONS
(DOC. #72); JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS
AND AGAINST PLAINTIFFS; TERMINATION ENTRY

---

African-American Plaintiffs Jazmen Peterson ("Jazmen") and Dameka

Cunigan ("Cunigan") (collectively "Plaintiffs"), alleged that they were subject to a

racially and sexually harassing environment while students at Kenton Ridge High

School ("KRHS"). Plaintiffs claimed that Defendants, KRHS Principal John Hill

("Hill"), Northeastern Local School District ("NELSD") Superintendent Louis A.

Kramer ("Kramer") and KRHS Vice-Principal Allyson Teusink ("Teusink"), in their

individual and representative capacities (collectively "Defendants"), failed to

properly investigate Plaintiffs' complaints of harassment or take appropriate steps

to eliminate the harassment. Plaintiffs alleged that in doing so, Defendants

violated Plaintiffs' equal protection (Count I), substantive due process (Count II)

and procedural due process (Count IV) rights under the Fourteenth Amendment to the U.S. Constitution (action brought via 42 U.S.C. § 1983) and violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* (Count III). Doc. #36. Plaintiffs further alleged that Defendants committed the state law torts of intentional infliction of emotional distress ("IIED") (Count V), violation of right to privacy (Count VI) and negligent infliction of emotional distress ("NIED") (Count VII). *Id.* This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

Defendants have filed a motion for summary judgment on all claims, Doc. #52, and a Pre-Trial Motion for Discovery Sanctions ("Sanctions Motion"). Doc. #72. For the reasons set forth below, Defendants' motion for summary judgment is SUSTAINED, and their Sanctions Motion is OVERRULED AS MOOT.

## I.    FACTUAL BACKGROUND[1]

Between November 2011, and February 2012, Cunigan allegedly experienced several instances of racial harassment at KRHS. The first incident occurred on November 30, 2011, when Cunigan overheard racist comments made by Tyler Byers ("Byers"), a Caucasian student, to an African-American student. Doc. #52, PAGEID #590-91 (citing Doc. #54-1, PAGEID #1490). Cunigan submitted a written complaint to Hill, who, after meeting with Cunigan, then spoke with Byers. *Id.*, PAGEID #591-92; Doc. #52-1, ¶¶ 5-6, PAGEID #630. Byers

---

[1] Plaintiffs did not cite to evidence of record in their Memorandum in Opposition to Defendants' Motion for Summary Judgment. Doc. #60. Thus, the Court considers the facts and evidence cited by Defendants in their Motion for Summary Judgment, Doc. #52, in its evaluation of Defendants' motion, except where, as discussed below, Defendants did not provide a sufficient evidentiary basis for those facts. The Court views all facts, evidence and reasonable inferences therefrom in a light most favorable to Plaintiffs, as the parties against whom the motion is directed.

confirmed that he made the racist comments, at which time Hill disciplined Byers pursuant to NELSD policy. *Id.* On the morning of December 2, 2011, Hill met with Cunigan's aunt and co-guardian, Jacki Peterson ("Jacki"), and Cunigan's grandmother, and informed them that Byers (although not named by Hill) had been disciplined. *Id.*, PAGEID #592 (citing Doc. #52-1, ¶ 8, PAGEID #631; Doc. #53-11, PAGEID #1187).  Byers was subsequently transferred from Cunigan's homeroom.  Doc. #54-1, PAGEID #1513.

On the afternoon of December 2, 2011, Cunigan approached Hill again, after receiving a racist and threatening letter in her locker.  Cunigan, Jacki and Jacki's uncle and co-guardian, Kyle Peterson ("Kyle"), believed Byers had written the note in retaliation for her complaint to Hill.  *Id.*, PAGEID #1519.  Cunigan was aware that Clark County, Ohio, Sheriff's Detective Perry Roeser ("Roeser") planned to arrest Byers if there was sufficient evidence that Byers was the author.  Doc. #52, PAGEID #593 (citing Doc. #54-1, PAGEID #1521).

On the morning of December 5, 2011, Cunigan received another note in her locker.  Doc. #54-1, PAGEID #1525. After Cunigan received the note, the Clark County Sheriff's office installed a hidden camera above Cunigan's locker.  Doc. #52, PAGEID #594 (citing Doc. #54-1, PAGEID #1531).  Cunigan did not remember receiving further racist or threatening notes after the camera was installed.  *Id.* (citing Doc. #54-1, PAGEID #1532).  After the second note, Cunigan was offered several accommodations by the school, including but not limited to changing her homeroom, lunch period or locker, leaving class early and having a

3

staff member escort her between classes. The proposed accommodations were rejected by Cunigan and her co-guardians. *Id*., PAGEID #595 (citing Doc. #54-1, PAGEID #1513-16). The goal of the accommodations "was to ensure Ms. Cunigan's safety at all times on school grounds, to reduce the chances of additional harassment, and to give Ms. Cunigan some academic flexibility to ensure no detrimental impact on her grades." Doc. #52-1, ¶ 16, PAGEID #631.

On January 13, 2012, Cunigan received a racist and threatening email from the address "tylerbyers97@yahoo.com." Cunigan brought the email to Hill, who again contacted Jacki and Kyle and law enforcement. Doc. #52, PAGEID #596 (citing Doc. #54-1, PAGEID #1539). Detective Roeser told Cunigan that he thought Byers was being set up. Doc. #54-1, PAGEID #1546-47. That afternoon, Kramer met with Cunigan's co-guardians, Jacki and Kyle, about accommodations, which they again rejected because Cunigan had been singled out and called a "snitch" by other students. Doc. #52, PAGEID #597 (citing Doc. #53-2, PAGEID #926).

On January 17, 2012, Cunigan saw a racist drawing of a skull displayed in an anatomy and physiology classroom. In a meeting that day with Jacki and Kyle, Hill allegedly said, "isn't [the woman in the drawing] just like Mamie . . . isn't she like the black woman on the Little Rascals?" Doc. #52, PAGEID #598. Jacki and Kyle termed Hill's question "rude" and left the meeting. *Id*. The student who drew the drawing and the teacher who allowed the drawing to hang in the classroom were disciplined. Doc. #52-1, ¶ 30, PAGEID #633. On January 20, 2012, Kramer

4

met with Jacki and Kyle, and agreed to implement additional racial sensitivity training for the staff. Doc. #52, PAGEID #598-99 (citing Doc. #53-13, PAGEID #1359). On February 9, 2012, Cunigan again received a racist and threatening email from "tylerbyers97@yahoo.com." Doc. #54-1, PAGEID #1551. As with the previous email, the sender was not identified. Apart from the above incidents, Cunigan did not claim that she suffered any other race-based harassment while a student at KRHS. Doc. #53-2, PAGEID #859.

On February 21, 2012, Cunigan and Jazmen engaged in a physical altercation with Nashayla Cochran ("Cochran"), a non-Caucasian student. Doc. #52, PAGEID #600-02 (citing Doc. #53-2, PAGEID #885, 887; Doc. #53-12, PAGEID 1243, 1261). The altercation began with Cunigan throwing a water bottle at Cochran without provocation. Jazmen escalated the incident by making an obscene gesture and using profane language toward Cochran. The physical fight eventually involved Cunigan, Jazmen, Cochran, Cunigan's cousin and at least one other student. By the end of the altercation, Dameka had pushed or hit two teachers, Cochran and another student. *Id*., PAGEID # 601-02 (citing Doc. #53-2, PAGEID #885, 887, 893-94, 896; Doc. #53-7, PAGEID #1072-73). The altercation was the only incident of harassment or threatening behavior that Jazmen remembers as being directed toward her. *Id*., PAGEID #601 (citing Doc. #53-6, PAGEID #1009). Cunigan and Jazmen were removed from KRHS on an emergency basis, and suspended for ten and five days, respectively. Doc. #53-13, PAGEID #1379, 1382. "[A]ll students directly involved in the altercation

5

(provoking and/or participating) were disciplined in accordance with their particular role and disciplinary history." Doc. #52, PAGEID #603 (quoting Doc. #52-1, ¶ 32, PAGEID #633). Some time after Cunigan was removed from KRHS, Hill retrieved a journal from Cunigan's locker and informed Jacki and Kyle about the journal and its contents. Doc. #52, PAGEID #604-06.

On February 22, 2012, Hill and Teusink sent letters to Jacki and Kyle via certified mail, informing them of Plaintiffs' suspensions and their right to appeal those suspensions. Doc. #52, PAGEID #603 (citing Doc. #53-13, PAGEID #1379, 1382). In the letter regarding Cunigan's suspension, Hill and Teusink stated that they had recommended to Kramer that Cunigan be expelled. *Id*. (citing Doc. #53-13, PAGEID #1379). Teusink called Jacki that day to inform her of the suspensions, and of Hill and Teusink's expulsion recommendation for Cunigan. *Id*. (citing Doc. #53-12, PAGEID #1263). On February 27, 2012, Kramer allegedly sent a letter via certified mail to Jacki and Kyle, informing them that Cunigan's expulsion hearing had been set for March 2, 2012. Doc. #52, PAGEID #604 (citing Doc. #53-13, PAGE ID #1384-87). However, Jacki states she never received the letter. Doc. #53-12, PAGEID #1269-70. During a February 29, 2012, conversation with Plaintiffs' counsel, Kramer did not inform counsel of the expulsion hearing. Doc. #53-13, PAGEID #1406. No later than the morning of March 2, 2012, and unbeknownst at that time to Defendants, both Cunigan and Jazmen began the process of withdrawing from KRHS and enrolling in an online school. Doc. #52, PAGEID #604 (citing Doc. #53-12, PAGEID #1272, 1274).

6

On March 2, 2012, an expulsion hearing took place without Cunigan, Jacki or Kyle present, at which time Kramer decided to expel Cunigan. That day, Kramer sent a letter to Jacki and Kyle notifying them of the decision and of their right to appeal the expulsion to the NELSD Board of Education. *Id*.; Doc. #53-13, PAGEID #1403. On March 6, 2012, Plaintiffs' attorney wrote a letter to Kramer, acknowledging receipt of the March 2, 2012, letter and notifying Kramer that Cunigan planned to appeal the expulsion decision. *Id*. Doc. #53-12, PAGEID #1283; Doc. #53-13, PAGEID #1406. However, Plaintiffs' counsel subsequently notified Defendants' counsel that Plaintiffs had withdrawn from KRHS and enrolled in a different school. After their withdrawal, Cunigan's suspension and expulsion and Jazmen's suspension were removed from their respective student records. Doc. #52, PAGEID #604 (citing Doc. #53-12, PAGEID #1284-85; Doc. #53-13, PAGEID #1407-08).

## II.   RELEVANT PROCEDURAL HISTORY

Cunigan, Jazmen, Jacki and Kyle filed their First Amended Complaint against Defendants, NELSD and Denise Schneider ("Schneider"), NELSD Treasurer, on August 20, 2013. Doc. #10. On September 18, 2013, Defendants, NELSD, and Schneider moved for judgment on the pleadings on all counts. Doc. #16. On May 20, 2014, Magistrate Judge Sharon L. Ovington issued a Report and Recommendations on Defendants' motion, concluding that the claims against NELSD failed as a matter of law because the NELSD is not an entity subject to

7

suit; rather, Plaintiffs' suit properly lay against the NELSD Board of Education.  The Report also concluded that Jacki and Kyle were not proper plaintiffs for any of the claims.  The Report recommended that all claims should be dismissed with prejudice to the extent they involved NELSD, Jacki or Kyle.  Doc. #25, PAGEID #277, 280.  The Report recommended that Cunigan and Jazmen's Title VI, equal protection and substantive due process claims be allowed to proceed as pled in the First Amended Complaint.  *Id.*, PAGEID #287, 289-90, 294.  The Report further recommended that Cunigan and Jazmen should be granted leave to amend their procedural due process and IIED claims.  *Id.*, PAGEID #295-96, 302-03.  Finally, the Report concluded that Plaintiffs had failed to set out plausible claims for NIED, invasion of privacy or loss of consortium, and, therefore, recommended that those claims be dismissed with prejudice.  *Id.*, PAGEID #302, 304-06.

On September 15, 2014, this Court adopted the Report and Recommendations, dismissing with prejudice Cunigan and Jazmen's claims of NIED and loss of consortium, all claims of Jacki and Kyle and all claims against NELSD.  Doc. #31, PAGEID #344-46.  The Court directed Plaintiffs, "[i]f [they] file a Second Amended Complaint . . . to name the Northeastern Local School District Board of Education as a defendant, as '[t]he board of education of each school district shall be a body politic, and, as such, capable of suing and being sued.'"  *Id.*, PAGEID #345 (quoting Ohio Rev. Code § 3313.17).  The Court dismissed without prejudice Cunigan and Jazmen's procedural due process, IIED and invasion of privacy claims, and allowed their Title VI, equal protection and substantive due

process claims to proceed as pled.  *Id.*, PAGEID #345-47.  On October 31, 2014,

Plaintiffs filed their Second Amended Complaint, which did not name NELSD,

Schneider or the NELSD Board of Education as a defendant.  Doc. #36.  On June

15, 2015, Defendants moved for summary judgment.  Doc. #52.

   After the Second Amended Complaint was filed, the parties had several

discovery disputes, and on April 30, 2015, Defendants filed an amended motion to

compel the discovery of emails, social media postings, cell phone records and a

journal referenced in Plaintiffs' initial complaint.  Doc. #48.  The Court granted

Defendants' amended motion on September 30, 2015.  Doc. #65.  On October 27,

2015, Cunigan and Jazmen submitted affidavits to the Court stating that they

were no longer in possession of the materials that were the subject of the

amended motion.  Doc. #67-1, 67-2.  On December 22, 2015, Defendants filed

the Sanctions Motion, seeking dismissal of the case or the issuance of "adverse

inferences as to each piece of spoliated evidence."  Doc. #72, PAGEID #1663.


## III.   SUMMARY JUDGMENT STANDARD

   Summary judgment shall be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment must be entered

"against a party who fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the

burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct.

2548, 91 L.Ed.265 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Rule 56 requires the nonmoving party to go beyond the (unverified) pleadings and present some type of evidentiary material in support of its position.  *Celotex*, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."  *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  In determining

whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d*, § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other properly presented materials in the record. Fed. R. Civ. P. 56(c)(3).

## IV.   SUFFICIENCY OF DEFENDANTS' EVIDENCE

### A.   Plaintiffs' Argument

In their Memorandum in Opposition, Plaintiffs did not refute or even address Defendants' legal arguments or statement of facts. Nor did Plaintiffs cite any specific evidence to support their contention that the deposition testimony of Plaintiffs, Jacki and Kyle "supports all of Plaintiffs' claims." Doc. #60, PAGEID #1577. Rather, they claim that Defendants failed to "demonstrate that there are no disputed factual issues, *id.*, and that "Defendants' legal arguments . . . all arise

11

from the 129 inadmissible pages attached to the Hill affidavit." *Id.*, PAGEID #1580. Thus, Plaintiffs argue, Hill's affidavit and supporting documentation should be stricken, and absent that affidavit, there is insufficient evidence upon which to grant summary judgment. *Id.*, PAGEID #1577-78.

Before evaluating Hill's affidavit and supporting materials, the Court emphasizes that Defendant's motion does not rest solely on those materials. Rather, Defendants' motion contains numerous citations to the depositions of Plaintiffs and Jacki, and other evidence, Doc. #53-54, to show that there is no genuine issue of material fact with respect to certain elements of Plaintiffs' claims. Once Defendants did so, it was not enough for Plaintiffs to merely allege that the deposition testimony of Plaintiffs, Jacki and Kyle, "contradicts Defendants' contention that there is no evidence to support Plaintiffs' claims." *Id.*, PAGEID #1577. Rather, Plaintiffs were required to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56). Thus, even if the Court were to strike Hill's affidavit and supporting materials, the Court would not automatically deny Defendants' motion, but would instead evaluate it based on the other evidence cited to or designated by Defendants.

### B. Legal Standard and Analysis

Evidence offered under Rule 56 in support of or in opposition to a motion for summary judgment "need not be in admissible <u>form</u>, but its <u>content</u> must be admissible." Doc. #60, PAGEID #1581 (quoting *Bailey v. Floyd Cty. Bd. of Educ.*,

106 F.3d 135, 145 (6th Cir. 1997)) (emphasis added); *see also* Fed. R. Civ. P. 56(c)(4) ("affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). In other words, the Court will not exclude an affidavit or other evidence, such as deposition testimony, simply because such items would not normally be admissible at trial in lieu of live testimony. However, the Court will exclude such materials if their <u>contents</u> would be inadmissible at trial, *e.g.*, the statements contained in the affidavit are not based on personal knowledge, or the statements in the deposition testimony or exhibits are themselves inadmissible hearsay. As the "party arguing for admission" herein, the burden is on Defendants to "establish[] the proper foundation for the admissibility of the statements" and exhibits. *Liadis v. Sears, Roebuck & Co.*, No. 01-3230, 47 F. App'x 295, 303 (6th Cir. 2002).

### 1.    <u>Hill Affidavit and Supporting Exhibits</u>

Turning first to the narrative portion of Hill's affidavit, the Court emphasizes that "it must be evident from the affidavit that the facts contained therein are based on personal knowledge." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 956 (S.D. Ohio 2000). Moreover, the statements contained in the affidavit must not themselves be hearsay if they are to be considered by the court. *Jacklyn v. Schering-Plough, Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). "Although the affidavit, ideally, will expressly state the basis

13

for the facts, in some instances, personal knowledge may be inferred from the content of the statements." *Reddy*, 137 F. Supp. 2d at 948. "'Personal knowledge may also flow logically from the context of the affidavit.'" *Id.* (quoting 11 James Wm. Moore *et al.*, *Moore's Federal Practice* § 56.14[1][c] (3d ed. 1999)). Thus, the Court considers only those paragraphs "for which it can[] ascertain that there is a personal knowledge basis," the proper evidentiary foundation, "for the facts contained therein." *Id*.

The narrative portion of Hill's affidavit, Doc. #52-1, PAGEID #630-34, contains statements of his personal knowledge and actions. He is competent to testify with respect to those statements, and, as discussed below, the Court will consider them. The Court takes special note of the following statements: "[t]rue and accurate copies of the schools investigation forms and notes for all the incidents related to Dameka Cunigan are attached to this affidavit as Exhibit 1," *id.*, ¶ 4, PAGEID #630 (emphasis in original); and "[u]pon further investigation, the African American student confirmed the offender's statement and further stated that he had not felt threatened by offender's racial comment." *Id.*, ¶ 6, PAGEID #630-31. These statements are being offered to prove the extent of Defendants' responses to the racial harassment suffered by Cunigan, not to prove the truth of the matters asserted. Fed. R. Evid. 801(c)(2). Thus, the statements in paragraphs 4 and 6 are not hearsay, and the Court may consider their contents.

However, the affidavit also contains three additional categories of statements for which the Court cannot reasonably infer personal knowledge. First,

14

Hill's affidavit contains references to actions or statements made by other parties or actors, *e.g.*, the Clark County, Ohio, Sheriff's Office. *E.g.*, *id.*, ¶ 12, PAGEID #631. Second, the affidavit contains numerous plural references to "we," without identifying Hill's statements or actions apart from other people included in the "we." *E.g.*, *id.*, ¶¶ 22-26, 29, PAGEID #632-33. Third, the affidavit contains references to occurrences, *e.g.*, "Ms. Cunigan's guardians were immediately contacted," *id.*, ¶¶ 11, PAGEID #631, without stating how or whether Hill was involved in or came to be aware of the occurrences. Nor do those statements contain information that permits a reasonable inference as to how what, if any, personal knowledge Hill has regarding the occurrences. Statements that fall into the above categories do not meet the personal knowledge requirement of Rule 56(c)(4) and cannot be considered. The Court concludes that paragraphs 1-8, 10, 14, 16-17, 20, 28 and 30-38 are based on personal knowledge, or are not offered for the truth of the matters asserted, and the Court will consider those paragraphs. Due to lack of personal knowledge, the proper evidentiary foundation, the Court will not consider paragraphs 9, 11-13, 15, 18-19, 21-27 and 29.

Turning to the materials attached to Hill's affidavit as Exhibit 1, the Court agrees with Defendants that that the materials are not being offered to prove the truth of the materials' contents, but rather "to show that an investigation actually took place contrary to the [P]laintiffs' allegations that no investigation took place." Doc. #61, PAGEID #1589. Thus, the materials are not hearsay. Fed. R. Evid. 801(c). However, the Court's review does not end there. For such materials to be

considered by the Court, they must be properly authenticated; that is, Defendants must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56." *Weldon v. Warren Cty. Children Servs.*, No. 1:12-cv-279-HJW, 2013 WL 6256476, at *3 (S.D. Ohio Dec. 4, 2013) (citing 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d*, §2722 (1998). "[T]he burden of proof for authentication is slight. . . . [T]here need be only a *prima facie* showing, to the court, of authenticity, not a full argument on admissibility." *Churches of Christ in Christian Union v. Evangelical Ben. Trust*, No. 2:07-cv-1186, 2009 WL 2146095, at * 5 (S.D. Ohio Jul. 15, 2009) (quoting *Lexington Ins. Co. v. W. Penn. Hosp.*, 423 F.3d 318, 328-29 (3d Cir. 2005)); *see also U.S. v. Tin Yat Chin*, 371 F.3d 31, 37-38 (2d Cir. 2004) (Rule 901 is satisfied "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity").

The Court notes that there are gaps in Hill's affidavit that make a finding of authentication less than certain. The affidavit does not state, for instance, that Hill is the author or custodian of KRHS's investigation records. Nor does it state that such records are kept in the ordinary course of school business. The affidavit contains no facts about the process by which investigation records are created and maintained. Also, while the pages of Exhibit 1 are Bates-stamped, there is no statement in the affidavit that these documents were produced in discovery. *See Churches of Christ*, 2009 WL 2146095, at *5 ("[w]here a document is produced

in discovery, there is sufficient circumstantial evidence to support its authenticity at trial") (citations and internal quotation marks omitted).

However, as discussed above, the Court finds that paragraph 4 of Hill's affidavit, which states that "[t]rue and accurate copies . . . are attached to this affidavit as Exhibit 1," Doc. #52-1, ¶ 4, PAGEID #630 (emphasis in original), is based on Hill's personal knowledge, and testimony of an individual with personal knowledge is an acceptable means of authenticating documents. Fed. R. Evid. 901(b)(1). In one recent decision, a District Court in the Sixth Circuit, mindful of Rule 901's modest burden, found that an affiant with personal knowledge "sufficiently authenticate[d] the documents by attesting that the document is a true and correct copy." *Red Strokes Entm't, Inc. v. Sanderson,* 977 F. Supp. 2d 837, 845 (M.D. Tenn. 2013) (citing Fed. R. Evid. 901(a)). Moreover, Plaintiffs have raised no issue as to the authenticity of the documents in Exhibit 1.

Finally, "[t]he appearance, contents, [and] substance" of the materials in Exhibit 1, "taken together with all the circumstances" surrounding the incidents between November 2011 and February 2012, Fed. R. Evid. 901(b)(4), lead the Court to conclude the materials in Exhibit 1 are "the school's investigation forms and notes for all the incidents related to Dameka Cunigan." Doc. #52-1, ¶ 4, PAGEID #630. Thus, Defendants have met their authentication burden, and the

17

Court may properly consider Exhibit 1 for the purpose of showing that Defendants did investigate the incidents of racial harassment.[2]

Hill states that Exhibits 2 and 3 to the affidavit are copies of NELSD's anti-harassment and anti-bullying administrative guidelines, respectively, that were in effect between November 2011 and February 2012.  Doc. #52-1, ¶¶ 35-36, PAGEID #633, 751-63.  As "publication[s] purporting to be issued by a public authority," they are self-authenticating.  Fed. R. Evid. 902(5).  Moreover, as KRHS principal, Hill would have personal knowledge of those policies.  Finally, they are not being offered for the truth of the matters asserted (*i.e.*, the contents of the guidelines), but rather to show that the guidelines were in effect at that time.  Therefore, they are not hearsay.  Fed. R. Evid. 801(c).  The Court may consider Exhibits 2 and 3 in their entirety.

In analyzing Defendants' motion for summary judgment, the Court will consider paragraphs 1-8, 10, 14, 16-17, 20, 28 and 30-38 of Hill's affidavit, and Exhibits 1, 2 and 3.  Paragraphs 9, 11-13, 15, 18-19, 21-27 and 29 of Hill's affidavit are stricken, and will be disregarded.[3]

―――――――――――――――

[2] As discussed above, Defendants are not offering the materials in Exhibit 1 for the truth of their contents, and are not hearsay.  Therefore, the Court need not analyze whether the materials satisfy one or more of the exceptions to the hearsay rule.  Fed. R. Evid. 803-04.

[3] In their memorandum in opposition to Defendants' motion for summary judgment, Plaintiffs stated that "[i]f the Court finds that the materials attached to the Hill affidavit are admissible, Plaintiffs request leave to supplement this opposition to address that material."  Doc. #60, PAGEID #1582.  To the extent that Plaintiffs are anticipatorily requesting leave to file a sur-reply, such a request must demonstrate good cause.  S.D. Ohio Civ. R. 7.2(a)(2).  Plaintiffs have not indicated why they were unable to address the materials contained or referenced in Defendants' summary judgment motion, nor have they otherwise demonstrated good cause for the requested leave.  Moreover, the arguments in Plaintiffs' memorandum in opposition were cursory.  Plaintiffs referenced, without

2.    **Cunigan Deposition**

As part of their motion for summary judgment, Defendants filed the full

depositions of Cunigan, Jazmen, Jacki and Kyle, and the accompanying exhibits.

Doc. #53-54.  "All deposition transcripts filed with the Clerk must include . . . the

certificate described in Fed. R. Civ. P. 30(f)."  S.D. Ohio Civ. R. 5.4(a).  Also, to be

considered by the Court, the transcripts normally must be properly authenticated.

A deposition "is authenticated in a motion for summary judgment when it identifies

the names of the deponent and the action and includes the reporter's [Fed. R. Civ.

P. 30(f)] certification that the deposition is a true record of the testimony of the

deponent."  *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) (quoting

*Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002)).

All four depositions at issue contain the caption and name of the deponent.

Doc. #53-6, PAGEID #988; Doc. #53-11, PAGEID #1140; Doc. #53-14, PAGEID

#1419; Doc. #54-1, PAGEID #1469.  The depositions of Jazmen, Jacki and Kyle

have the court reporter's signed certification.  Doc. #53-7, PAGEID #1095; Doc.

#53-12, PAGEID #1313; Doc. #53-14, PAGEID #1459.  However, Cunigan's

deposition does not have a signed certification of the reporter.   The Court notes

---

analysis, 129 pages of evidence that they claimed were inadmissible.  Doc. #60, PAGEID #1580.
Plaintiffs did not analyze the narrative portion of Hill's affidavit or cite to any evidence to support
their blanket claim that Plaintiffs, Jacki and Kyle's deposition testimony "supports all of Plaintiffs'
claims."  *Id.*, PAGEID #1577.  As Plaintiffs completely failed to meet their evidentiary burden in
their initial memorandum, or even make an attempt to do so, the Court will not grant them a second
attempt to respond.

Finally, and most importantly, the Court did not rely on Exhibits 1, 2 or 3 in its evaluation of
Defendants' motion.  Therefore, Plaintiffs' response to the materials would not alter the Court's
decision granting summary judgment to Defendants.  Plaintiffs' request is overruled.

that Defendants' filing fails to comport with S.D. Ohio Civ. R. 5.4(a), and that, in

the Ninth Circuit, failure to attach the signed certification requires exclusion of the

transcript if it cannot be otherwise authenticated through a review of its contents.

*Orr*, 285 F.3d at 774 (citing Fed. R. Evid. 901(b)(4); *Pavone v. Citicorp Cred.*

*Servs., Inc.*, 60 F. Supp. 2d 1040, 1045 (S.D. Cal. 1997)).  However, in

*Alexander*, the plaintiff, like Defendants in this case, submitted a cover sheet but

not the signed certification.  576 F.3d at 560.  The Court stated that "[t]he

defendant takes no issue with the deposition excerpts' authenticity, . . . so we will

consider them, as did the district court."  *Id.*; *but see Snelling v. Chapin*, No. 1:09-

cv-340, 2010 WL 5125579, at *3 (W.D. Mich. Nov. 1, 2010) (deposition was

excluded as not properly authenticated because offerant failed to include cover

sheet or signed certification).

   In this case, Plaintiffs claimed that the materials attached to Hill's affidavit

were inadmissible hearsay, but they took no issue with the authenticity of any of

the depositions.  Indeed, Plaintiffs attempted to rely on the depositions, including

Cunigan's, in their efforts to show that there are genuine issues of material fact.

Doc. #60, PAGEID #1577, 1581.  Moreover, Cunigan agreed to waive her

signature, and the parties stipulated that "said deposition [is] to have the same

force and effect as though signed by the said DAMEKA CUNIGAN."  Doc. #54-1,

PAGEID #1472 (emphasis in original).  Finally, the appearance, content and

substance of the document, taken together with Cunigan's waiver of signature and

the parties' above stipulation, permits a reasonable trier of fact to find that the

filed document is, in fact, Cunigan's deposition.  Fed. R. Evid. 901(a), 901(b)(4); *see also Emery v. Wells Fargo Bank, N.A.*, No. CV05-1485PHXNVW, 2006 WL410980, at *2 (D. Ariz. Feb. 16, 2006) (authenticating exhibits to motion for summary judgment under Rule 901(b)(4) because "all of the Exhibits relied on by the court in its disposition of these motions are specifically labeled for or addressed to, or are signed or initialed by, the [non-movants]").  Therefore, the Court may and will consider Cunigan's deposition in evaluating Defendants' motion.

## V.  FEDERAL CLAIMS

### A.  Equal Protection (Count I)

Plaintiffs alleged that Defendants' actions "were motivated by the intentional objective to discriminate against the plaintiff students due to their race and gender," Doc. #36, ¶ 11, PAGEID #380, and that "Defendants jointly and severally have denied Plaintiffs . . . their right to equal protection of the laws as secured by the Fourteenth Amendment to the United States Constitution." *Id*. ¶ 47, PAGEID #388.  In their motion, Defendants argue that "[w]hile the plaintiffs allege that third persons discriminated against them based upon their race, they have absolutely no evidence that **the defendants** treated them differently than a person in a non-suspect class."  Doc. #52, PAGEID #614 (emphasis in original).

"The threshold element of an equal protection claim is disparate treatment." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2000). Thus, to survive summary judgment, Plaintiffs must show that Defendants treated

similarly situated Caucasian students differently. Such a showing is normally made by Plaintiffs pointing to evidence properly before the court that creates a genuine issue of fact as to whether Defendants "intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (*en banc*)). However, the Sixth Circuit has also allowed plaintiffs raising equal protection claims to "demonstrate [d]efendants' racially discriminatory intent" by showing that defendants were "deliberately indifferent to the allegations of student-on-student racial harassment." *Williams v. Port Huron Sch. Dist.*, No. 10-1636, 455 F. App'x 612, 618 (6th Cir. 2012) (citing *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 139-40 (2d Cir. 1999)).

### 1. Intentional Discrimination

Plaintiffs have not designated any evidence that they were treated differently by Defendants due to their race.[4] As discussed above, Byers, the only Caucasian student whose conduct has been placed at issue, was disciplined in accordance with NELSD Board of Education policy. Doc. #52-1, ¶ 7, PAGEID #631. Defendants and Sheriff's deputies were prepared to take further action against Byers had it been shown that he was the perpetrator of any other incidents. Doc. #52, PAGEID #593. Also, Byers is not a "similarly-situated"

---

[4] In their memorandum in opposition to Defendants' motion for summary judgment, Plaintiffs mentioned only in passing the allegations of sex discrimination contained in their Second Amended Complaint. Doc. #60, PAGEID #1575-76. As Plaintiffs failed to address the substance of their sex discrimination allegations, they are deemed to have abandoned their claims to the extent that they arise from those allegations. *Brown v. VHS of Michigan, Inc.*, No. 13-1054, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases).

22

comparator for equal protection claims. The "comparators must be similar in all of the *relevant* aspects," including in the conduct undertaken by a plaintiff and comparator that prompted the response (or lack thereof) from a defendant. *Foster v. Michigan*, No. 13-2209, 573 F. App'x 377, 396 (6th Cir. 2014) (internal quotation marks and citations omitted) (emphasis in original). Byers's conduct— making a racist remark—is not comparable to Cunigan's initiation of and Jazmen's escalation of a physical altercation that involved Plaintiffs, other students and KRHS teachers. Moreover, Cunigan, in her deposition, admitted that she did not know what more Defendants could have done with respect to any of the racially-charged incidents in the period from November 2011 to February 2012. Doc. #53-2, PAGEID #919. The only instance of harassment testified to by Jazmen involved Cochran, a non-Caucasian student. Doc. #53-6, PAGEID #1009. In the absence of any disparate treatment, much less treatment motivated by race-based animus, Plaintiffs cannot sustain an equal protection claim based on intentional discrimination.

### 2. **Deliberate Indifference**

In *Vance v. Spencer Cty. Pub. Sch. Dist.*, the Sixth Circuit examined liability for deliberate indifference to student-to-student harassment in the context of Title IX of the Education Amendments of 1972, 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq.* 231 F.3d 253 (6th Cir. 2000). "Title VI, Title IX, and § 1983 deliberate indifference standards are more or less identical." *Fulton v. Western Brown Local Sch. Dist. Bd. of Educ.*, No. 1:15-cv-53, 2015 WL 3867243, at * 6

n.3 (S.D. Ohio Jun. 23 2015); *see also Williams*, 455 F. App'x at 618-20 (applying *Vance* to Title VI and equal protection claims).  Therefore, the Court will evaluate Plaintiffs' equal protection (Count I) and Title VI (Count III) deliberate indifference claims under the three elements set out in *Vance*:

> (1) the . . . harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the funding recipient had actual knowledge of the . . . harassment; and (3) the funding recipient was deliberately indifferent to the harassment.

231 F.3d at 258-59 (6th Cir. 2000) (citations omitted).

Plaintiffs may prove deliberate indifference "only where the [party's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  *Vance*, 231 F.3d at 260 (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).  "In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as [or as] not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649 (1999).

The "clearly unreasonable" standard affords institutions wide latitude in determining what the appropriate response to harassment should be, as long as there has been some measured response. *Williams*, 455 F. App'x at 619 (holding that, as a matter of law, principal's decisions to install surveillance where racial harassment had occurred, to promptly notify the superintendent and law enforcement of incidents, to hold assemblies on respect and dignity and to

24

investigate harassment claims meant that he was not deliberately indifferent to student-to-student racial harassment allegations); *Estate of Lance v. Lewisville Ind. Sch. Dist.*, 743 F.3d 982, 997-98 (5th Cir. 2014) (in claim brought under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, affirming grant of summary judgment to school district that, in response to harassment reports, interviewed students and notified all parents of alleged harassment).  Claims that educational institutions were deliberately indifferent to student-to-student harassment have been sustained primarily when a party, after being made aware of the harassment, has:  failed to undertake any investigation or any other efforts in response, *Davis*, 526 U.S. at 654; refused to change its patently inadequate response protocols, *Vance*, 231 F.3d at 261; or "ignored the many signals that greater, more direct action was needed."  *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 671 (2d Cir. 2012).

The undisputed facts above show that Defendants responded to Cunigan's complaints of harassment promptly and reasonably.  School officials notified law enforcement after the second incident.  Doc. #54-1, PAGEID #1519.  After the third incident, a surveillance camera was placed near Cunigan's locker, after which time there were no further harassing notes.  Doc. #54-1, PAGEID #1531-32.  Byers, the only Caucasian student who was identified as having made racially harassing statements, was promptly disciplined by Hill.  Doc. #52-1, ¶¶ 6-7, PAGEID #630-31.  On multiple occasions, Defendants offered Cunigan accommodations in an effort to protect her from further harassment.  Doc. #53-

25

11, PAGEID #1193-95.  Kramer also agreed to implement additional sensitivity training for staff at the suggestion of Jacki and Kyle, Cunigan's guardians.  Doc. #52-1, ¶ 33, PAGEID #633; Doc. #53-13, PAGEID #1359.

In the Second Amended Complaint, Plaintiffs alleged that there was a "longstanding custom of racial intolerance, nonracial pluralism and discrimination that permeates KRHS," Doc. #36, ¶ 17, PAGEID #381, and that Defendants "repeatedly ignored or failed to take effective action to cause the termination of the activities leading to [Cunigan's] condition." *Id.*, ¶ 45, PAGEID #388.  However, they have offered no evidence to support these allegations.  In her deposition, Cunigan conceded that she was unaware of any racially discriminatory incidents taking place at KRHS prior to November 2011, and that she did not know what different or additional actions Hill and Teusink should have taken in response to the harassment she suffered.  Doc. #53-2, PAGEID #919. The Court concludes that, as a matter of law, Defendants' actions were not "clearly unreasonable."  In the absence of any evidence of race-based disparate treatment, either through intentional discrimination or deliberate indifference, Defendants' motion for summary judgment must be sustained on Plaintiffs' equal protection claim.

### B.  Substantive Due Process (Count II)

Plaintiffs alleged that "Defendants' actions, in failing to intervene on behalf of the plaintiff students . . . w[ere] so reprehensible that it is shocking to the conscience and violative of the right to substantive due process secured by the Fourteenth Amendment."  Doc. # 36, ¶ 50, PAGEID #389.  Defendants argue that

Plaintiffs' substantive due process claim fails because neither of the exceptions to the general principle that "there is no constitutional right to government protection from private actors" is applicable.  Doc. #52, PAGEID #615 (citing *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 197-98, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Robinson v. Twp. of Redford*, No. 01-1196, 48 F. App'x 925, 928 (6th Cir. 2002)).

A substantive due process claim that is based not on particular actions by government officials that were directed at particular individuals, but from failure by those officials to protect those individuals from the acts of third parties, may be sustained under two circumstances.  A claim may be sustained if a special relationship existed between the individuals harmed and the state actor. *DeShaney*, 489 U.S. 189 at 198.  However, the Sixth Circuit has strongly rejected the notion that there is "a special relationship between school districts and their students that gives rise to an affirmative duty on the part of the school district to protect its students." *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir. 1995); *accord*: *Doe v. Big Walnut Local Sch. Dist. Bd. of Educ.*, 837 F. Supp. 2d 742, 752 (S.D. Ohio July 27, 2011) ("Substantive Due Process Clause . . . does not impose a constitutional duty on the school to protect students from harm inflicted by private actors, *such as their classmates*") (emphasis added).

Thus, to survive summary judgment, Plaintiffs would have to show that there is evidence of the second exception, a "state-created danger," which requires that:

27

> (1) an affirmative act by the governmental actor either created or
> increased the risk that the plaintiff would be exposed to the injurious
> conduct of the private person;
> (2) the governmental actor's act especially endangered the plaintiff or
> a small class of which the plaintiff was a member; and
> (3) the governmental actor had the requisite degree of culpability.

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir.

2008) (citation omitted). With respect to culpability, an official's action must not

be merely negligent, but rather "so brutal and offensive to human dignity as to

shock the conscience." *Smith v. Guilford Bd. of Educ.*, No. 06-1094-cv, 226 F.

App'x 58, 62 (2d Cir. 2007) (quoting *Smith v. Half Hollow Hills Cent. Sch.*

*Dist.,* 298 F.3d 168, 173 (2d Cir. 2002)).

In her Report and Recommendations on Defendants' Motion for Judgment on

the Pleadings, Magistrate Judge Ovington noted that "Defendants . . . have not

specifically addressed allegations in Plaintiffs' Amended Complaint that, if credited

as true and construed in Plaintiffs' favor, support their claim that Defendants acted

with the purpose of 'creating an environment where it was customary for Blacks to

be harassed with impunity.'" Doc. #25, PAGEID #293-94 (quoting Doc. #21,

PAGEID #238). However, <u>Plaintiffs</u> made no such allegations in the Second

Amended Complaint. Nor have they offered any evidence supporting a contention

that Defendants created such an environment. Defendants concede that the

alleged harassment suffered by Cunigan at the hands of other students would

shock the conscience of a reasonable person. Doc. #52, PAGEID #617. However,

a mere failure to act by the Defendants to stop that harassment—the heart of

Plaintiffs' substantive due process claim—cannot rise to the level of shocking the

conscience for such a claim. *Smith*, 226 F. App'x at 62; *Moore v. Chilton Cty. Bd. of Educ.*, 936 F. Supp. 2d 1300, 1309 (M.D. Ala. 2013) ("a State's failure to act, even when the State knows harm may occur absent its intervention, is not enough to state a substantive due process violation"). Moreover, as discussed above, Defendants did not fail to act; rather, they disciplined the offending student and staff member, involved law enforcement and attempted to protect Cunigan from further harassment.

Finally, there is no evidence before the Court that Defendants took any affirmative actions that increased Plaintiffs' risk of racial harassment. Defendants' motion for summary judgment is sustained on the substantive due process claim.[5]

### C.    Title VI (Count III)

In Count III, Plaintiffs alleged that "Defendants, jointly and severally, discriminated and retaliated against Plaintiffs, including but not limited to, treating them differently than similarly situated white students because of their race, in violation of Title VI of the Civil Rights Act of 1964." Doc. #36, ¶ 53, PAGEID #389. Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

_____

[5] The Court notes that Hill's alleged statement regarding the woman depicted in the racist drawing, "isn't she just like Mamie? . . . [I]sn't she like the black woman on Little Rascals?" Doc. #53-12, PAGEID #1244, could be considered by a reasonable trier of fact to shock the conscience. However, Plaintiffs did not allege that this supposed affirmative statement by Hill contributed to the alleged substantive due process violation.

Plaintiffs claimed that "[t]he actions of [Byers] and other KRHS students, known to defendants, were constant, threatening and calculated to produce fear and apprehension in [Plaintiffs]." Doc. #36, ¶ 14, PAGEID #380. Defendants' purported failure to stop the "constant and aggressive racially charged and gender based actions of [Byers] and other KRHS students," id., ¶ 15, PAGEID #380, allegedly constituted discrimination under Title VI. Id., ¶¶ 20, 53, PAGEID #380. Defendants argue that they responded and investigated promptly all claims of racial harassment, punished known offenders and worked with Plaintiffs' guardians to implement remedial measures. Doc. #52, PAGEID # 598-99, 611. As a matter of law, they claim, Plaintiffs cannot meet the high deliberate indifference standard required to hold a school district liable. *Id.*, PAGEID #611.

Plaintiffs brought each count in the Second Amended Complaint against Defendants in their individual, and in their official capacities, the latter of which is "'in all respects, other than name, to be treated as a suit against the entity[,]' in this case the [NELSD] Board of Education." Doc. #52, PAGEID #608 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). This distinction is important for Plaintiffs' Title VI claim, as only "the entity . . . receiving the financial assistance" may be sued for an alleged violation. *Id*. (quoting *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1356 (6th Cir. 1996)).

As there is no evidence that Defendants, in their individual capacities, receive federal assistance, Plaintiffs' Title VI claim against Defendants in their

individual capacities fails as a matter of law.  Moreover, the NELSD Board of Education was not named as a Defendant in the Second Amended Complaint, despite this Court directing Plaintiffs to do so.  Doc. #31, PAGEID #345.  However, pursuant to *Graham*, the Court analyzes Plaintiffs' Title VI claim against Defendants in their official capacities as a claim against the NELSD Board of Education.

### 1.    Discrimination

As discussed above, there is not sufficient evidence for a reasonable trier of fact to infer that Defendants intentionally discriminated against Plaintiffs by treating similarly-situated Caucasian students more favorably.  The Court has also held that, as a matter of law, Defendants were not deliberately indifferent in their responses to the student-to-student harassment suffered by Plaintiffs.  As there is no genuine issue of material fact that would allow a reasonable trier of fact to conclude that Defendants discriminated against Plaintiffs based on their race, Plaintiffs may not sustain their Title VI claim based on discrimination.

### 2.    Retaliation

Plaintiffs allege that Defendants retaliated against them for their complaints of discrimination by "conspir[ing] to deprive the plaintiff students of proper notice of a disciplinary hearing," Doc. #36, ¶ 18, PAGEID #381, and expelling Cunigan while not disciplining Byers "and the other students who perpetuated racist acts." Id., ¶ 19, PAGEID #381.  Defendants argue that "these allegations are not

supported by the actual evidence, including the plaintiffs' own testimony." Doc. #52, PAGEID #612.

The Department of Education's Title VI regulations state that "[i]ntimidatory or retaliatory acts [are] prohibited," and that

> [n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

34 C.F.R. §100.7(e). To survive summary judgment, Plaintiffs must proffer evidence creating at least a genuine issue of material fact that "Defendants retaliated against Plaintiffs because one or more of them reported racial threats and harassment to school officials." Doc. #25, PAGEID #290 (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005)).

Defendants have put forth evidence that Byers, the only student identified as a perpetrator of racist actions, was disciplined in accordance with NELSD policy. Doc. #52-1, ¶¶ 6-7, PAGEID #630-31. Plaintiffs have put forth no evidence to rebut or call into question Defendants' accounting of the facts, nor have they designated evidence that any student besides Byers was responsible for racial harassment against Plaintiff Cunigan.

There does appear to have been a February 27, 2012, letter sent by Kramer notifying Jacki and Kyle of the hearing on Cunigan's expulsion. Doc. #53-13, PAGEID #1384-87. The letter contained Jacki and Kyle's correct address and

appears to have been sent in the same manner—first-class certified mail—as the March 2, 2012, letter from Kramer notifying Jacki and Kyle of Cunigan's expulsion, which Jacki did receive. *Id.*, PAGEID #1406. As discussed above, Jacki testified that she did not receive the February 27, letter, and in a March 6, 2012, letter from Plaintiffs' counsel to Kramer, Plaintiffs' counsel stated that during a February 29, 2012, telephone call, Kramer did not inform their counsel of the expulsion hearing. *Id*. However, there is no evidence that would permit a reasonable trier of fact to conclude that the Defendants intended to deprive Cunigan or Jacki and Kyle, her guardians, of notice and opportunity to be heard at the expulsion hearing. There is certainly no evidence that the Defendants conspired to effect such a deprivation. As there is no evidence that Defendants retaliated against Plaintiffs after they complained of racial harassment, Defendants' motion is sustained with respect to the Title VI claims against Defendants in their official capacities, as well.

### D.  Procedural Due Process (Count IV)

Plaintiffs claimed that Defendants failed to notify Plaintiffs' counsel of the expulsion hearing, despite knowing that they were represented by counsel, and thus failed to provide notice and a meaningful opportunity to be heard at the hearings. Doc. #36, ¶ 19, PAGEID #381. Plaintiffs alleged that this failure "violated Plaintiffs' right to procedural due process as secured by the Fourteenth Amendment." *Id.*, ¶ 56, PAGEID #389. Defendants argue that the notice of the expulsion hearing provided was sufficient, that Plaintiffs failed to exhaust their

33

administrative remedies and that Plaintiffs cannot show harm from any alleged due process violation.  Doc. #52, PAGEID# 619-22.

In analyzing a procedural due process claim, this Court must analyze:  (1) whether Plaintiffs have identified a protected liberty or property interest (which the Court assumes, for the purposes of this motion, that they have); and (2) if so, whether Defendants provided sufficient notice and opportunity to be heard.  *Bd. of Regents of St. Colls. v. Roth*, 408 U.S. 564, 572-73, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (citations omitted).  In the context of school suspensions and expulsions, due process requires that a plaintiff be provided "'oral and written notice of the charges against [the student] and, if he denies them, *an explanation of the evidence the authorities have* and an opportunity to present his side of the story.'"  *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 927 (6th Cir. 1988) (quoting *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)) (brackets and emphasis in original).  To recover, a plaintiff must demonstrate "that he suffered *actual* injury . . . caused by the violation."  *Id*. at 928 (emphasis in original).

Plaintiffs did not allege due process violations with respect to Cunigan and Jazmen's initial suspensions.  Also, there is no evidence that an expulsion hearing was ever set for Jazmen; nor is there evidence that Defendants ever considered expelling her.  Thus, the only questions before the Court are whether Defendants' notice and hearing policies were sufficient with respect to Cunigan's expulsion

34

proceedings, and, if they were not, whether Cunigan was harmed by Defendants' insufficient policies.

"[T]he party obliged to give notice . . . must adopt a method 'reasonably calculated' to reach the intended recipient." *Dusenberry v. United States*, 534 U.S. 161, 181, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (internal quotation marks omitted).  It appears that Defendants attempted to provide notice of the March 2, 2012, hearing by a letter from Kramer to Jacki and Kyle, postmarked February 27, 2012, and sent first-class certified mail to their home address.  Doc. #53-13, PAGEID #1384-87.  Certified mail sent to the correct address has been held to provide sufficient notice.  *U.S. v. Bolton*, 781 F.2d 528, 532 (6th Cir. 1985).  However, it is not clear that such notice satisfies due process absent some indicia that the mail actually reached the intended recipient.  *See, e.g.*, *id.* ("service of notice is not made incomplete by refusal to accept delivery or to collect mail"); *Hoffman v. Nat'l Equip. Rental, Ltd.*, 643 F.2d 987, 990 (4th Cir. 1981) (no due process violation if certified mail receipt is returned and marked "refused").  Here, the certified mail receipt for the February 27, 2012, letter was unsigned.  Doc. #53-13, PAGEID #1386-87.  Jacki testified that she never received the letter and was unaware of the March 2, 2012, hearing.  Doc. #53-12, PAGEID #1269-70.  Thus, the Court cannot conclude that, as a matter of law, the initial expulsion hearing satisfied due process.

However, Plaintiffs' claim fails because Cunigan did not exhaust her administrative remedies.  On March 2, 2012, Kramer sent a letter to Jacki and

Kyle, informing them of the expulsion decision and of their right to appeal that expulsion decision to the full Board of Education, as provided under Ohio Rev. Code § 3313.66.  Doc. #52, PAGEID #620; Doc. #53-13, PAGEID #1403. It is undisputed that Jacki and Kyle received notice, as Plaintiffs' attorney informed Kramer that he was in receipt of the letter and that Cunigan intended to seek review of the expulsion decision.  *Id.*; Doc. #53-13, PAGEID #1406.  However, no hearing was ever held because Cunigan and Jazmen enrolled in a different school, and Defendants removed the expulsion and suspensions from Plaintiffs' records as part of settlement.  Doc. #53-13, PAGEID #1407.

"Courts have prudently required that claims for denial of procedural due process under § 1983 plead and prove the inadequacy of state remedies." *Farkas v. Ross-Lee*, 727 F. Supp. 1098, 1107 (E.D. Mich. 1989) (citing *Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983)).  The presence of an administrative remedy and Plaintiffs' failure to exhaust that remedy, or to designate evidence to show that the remedy was inadequate, mean that Plaintiffs cannot sustain a procedural due process claim.  Thus, Defendants' motion for summary judgment must be sustained on that claim.[6]

---

[6] With respect to the 42 U.S.C. § 1983 due process and equal protection claims, Defendants argue that, in their official capacities, they are not liable under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1991), and that they have qualified immunity in their individual capacities.  Doc. #52, PAGEID #622-24.  A prerequisite to finding Defendants liable in their official capacities under *Monell* is unconstitutional conduct by an employee, *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 471 (6th Cir. 2006), and the first step in a qualified immunity analysis is usually determining whether Plaintiffs have shown the deprivation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  The

## VI.   STATE LAW CLAIMS

### A.   Intentional Infliction of Emotional Distress (Count V)

In Count V, Plaintiffs alleged that Defendants "have caused intense emotional distress to Dameka Cunigan," Doc. #36, ¶ 59, PAGEID #390, who "has been required to receive extensive medical counseling and treatment." *Id.*, ¶ 60, PAGEID #390.  To sustain an IIED claim under Ohio law, Cunigan must prove "that (1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St. 3d 369, 375, 453 N.E.2d 666 (1983), *abrogated on other grounds by Welling v. Weinfield*, 113 Ohio St. 3d 464, 2007-Ohio-2451, 866 N.E.2d 1051.

In dismissing Plaintiffs' IIED claim from their First Amended Complaint without prejudice, this Court adopted the conclusion in Magistrate Judge

---

Court has concluded that, as a matter of law, no such misconduct or deprivation occurred, and thus it need not discuss and evaluate Defendants' *Monell* liability and qualified immunity arguments.

Ovington's Report and Recommendations that Plaintiffs had failed to allege that they had suffered emotional anguish that was "serious and of such a nature that no reasonable person could be expected to endure it."  Doc. #25, PAGEID #301 (quoting *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111 (6th Cir. 2008)).  Plaintiffs have designated no evidence that would permit a reasonable trier of fact to infer that Cunigan suffered such emotional anguish.  Moreover, a mere failure by school officials to act to stop student-to-student harassment is, as a matter of law, not the extreme and outrageous conduct required to sustain an IIED claim.  *Anoai v. Milford Exempted Sch. Dist.*, No. 1:10-cv-44, 2011 WL 53164, at*9 (S.D. Ohio Jan. 6, 2011).  Defendants' motion with respect to the IIED claim is sustained.

### B.  Violation of Right of Privacy (Count VI)

In Plaintiffs' invasion of privacy claim, they alleged that "Defendant Hill without privilege or justification, entered Dameka Cunigan's student locker, reviewed her personal journal and communicated details of Dameka Cunigan's private life to third persons."  Doc. #36, ¶ 64, PAGEID #390.  These allegations are identical to those in the First Amended Complaint, Doc. #10, ¶ 38, PAGEID #151, and Plaintiffs allege no new facts about communication of Cunigan's private details to the general public.  This Court, in dismissing Plaintiffs' initial invasion of privacy claim without prejudice, allowed Plaintiffs to restate the claim "only if their factual allegations demonstrate the type of communication that would support such a claim."  Doc. #31, PAGEID #346 (emphasis in original).  Plaintiffs' failure to

refine or augment their allegations with proper Rule 56 evidence causes this Court to sustain Defendants' motion for summary judgment on this claim as well.

### C.    Negligent Infliction of Emotional Distress (Count VII)

Plaintiffs' claim for NIED in the Second Amended Complaint, Doc. #36, ¶¶ 67-70, PAGEID #391, has already been dismissed with prejudice.  Doc. #31, PAGEID #346.  Thus, Count VII is not properly before the Court.[7]

### VII.    SANCTIONS MOTION

After Plaintiffs disclosed that they were not in possession of the discovery materials that were the subject of this Court's order granting Defendants' motion to compel, Defendants moved to have the case dismissed or provide adverse inference jury instructions with respect to all evidence that Plaintiffs destroyed or failed to maintain.  Doc. #72, PAGEID #1663.  As Defendants' summary judgment motion is sustained in full, and judgment will be entered in their favor, they will have received the relief sought in the Sanctions Motion.  Thus, Defendants' Sanctions Motion is overruled as moot.

---

[7] Defendants argue that Plaintiffs' state law claims are barred by political subdivision and political subdivision employee immunity.  Doc. #52, PAGEID # 627-28 (citing Ohio Rev. Code §§ 2744.02(B), 2744.03(A)(6)).  To show that Defendants are not entitled to such immunity, Plaintiffs would have to proffer evidence that the tort at issue actually occurred. *See, e.g.*, *Essman v. City of Portsmouth*, 4th Dist. Scioto No. 09CA3325, 2010-Ohio-4837, at ¶ 28 (Sept. 29, 2010) ("Before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish:  (1) the elements required to sustain a negligence action"); *Elston v. Howland Local Sch.*, 113 Ohio St. 3d 314, 2007-Ohio-2070, 865 N.E.2d 845, at ¶¶ 22-24 (collecting cases) (political subdivision employee immunity only at issue when plaintiff actually suffered an injury).  The Court has concluded that, as a matter of law, Plaintiffs did not suffer any injury from tortious conduct.  Thus, the Court need not determine whether Defendants, in their official or individual capacities, are entitled to immunity from Plaintiffs' state law claims.

## VIII.  CONCLUSION

Defendants' Motion for Summary Judgment on all counts of Plaintiffs' Second Amended Complaint, Doc. #52, is SUSTAINED.  Defendants' Sanctions Motion, Doc. #72, is OVERRULED AS MOOT.  Judgment shall be entered in favor of Defendants and against Plaintiffs.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.


Date: February 17, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

40